572 A.2d 827

Mary LANCIE and Louis Lancie

v.

William GILES, James Tolar, Charles V. Becker, John Bosetti, Francis Butler and Joseph Capuso.

Appeal of William GILES, James Tolar, John Bosetti, and Francis Butler, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1989.

Decided March 23, 1990.

Gloria A. Tischuk, Deputy Atty. Gen., with her, Kate L. Mershimer, Deputy Atty. Gen., Calvin R. Koons, Senior Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for appellants.

William R. Haushalter, Rosenberg, Kirshner, P.A., Pittsburgh, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

## OPINION

BARRY, Judge.

William Giles, James Tolar, John Bosetti, and Francis Butler (appellants)[1] are police officers from the City of Pittsburgh who were involved in obtaining and executing a search warrant. The officers forcibly entered a home owned by Mary and Louis Lancie (appellees), arrested Albert Stevenson, the subject of their investigation, and searched the floor of the house where Stevenson was found. The Lancies live in the home and were renting the ground floor[2] to Stevenson. Mary Lancie had some contact with the officers who entered through the front door into the portion of the house occupied by the Lancies. Stevenson later pled guilty to criminal charges concerning gambling activities.

The Lancies brought suit in the Court of Common Pleas of Allegheny County against the officers, alleging negligent and intentional violations of their civil rights under 42 U.S.C. § 1983, in addition to claims under state law of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The Section

1. An additional defendant in the action below, Joseph Caruso, misspelled Capuso in the caption, was dismissed in the trial court due to improper service.

2. Appellants refer to the area where Stevenson was found as the basement and appellees refer to it as the first or ground floor.

1983 counts were based on allegations that the Lancies' Fourth and Fourteenth Amendment rights were violated when their portion of the home was entered into by the officers who had no basis to believe that the Lancies were involved in any criminal activity. The state law counts alleged damage to their door, psychological injuries to Mrs. Lancie, and loss of consortium for Mr. Lancie. Following the close of the pleadings, appellants moved for summary judgment based on qualified immunity under federal law and statutory sovereign and common law immunity. The trial court denied the motion. The officers appealed to this Court with respect to the qualified immunity question, claiming that this issue was immediately appealable pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and petitioned the trial court to certify the remainder of the immunity defenses for interlocutory appeal. The trial court refused to do so and that decision was also appealed. On July 10, 1989, this Court granted permission to appeal on all of the immunity questions.[3] We affirm in part and reverse in part.

We will first address the issue of qualified immunity in the federal law counts. Initially we must state that it is proper for this Court to apply qualified immunity to state officers because we are considering the violation of federal law. The federal courts have held that state tort immunity acts are not controlling when a question of federal law is involved, *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), *Wade v. City of Pittsburgh*, 765 F.2d 405 (3d Cir.1985), and the U.S. Supreme Court has invoked qualified immunity for state officers in the context of an action under 42 U.S.C. § 1983. *Malley v. Briggs*, 475

**3.** Since permission to appeal has already been granted by an order of this Court, the issue of whether this appeal is interlocutory is not before us. We note that under *Bollinger v. Obrecht*, 122 Pa.Commonwealth Ct. 562, 552 A.2d 359 (1989), an order denying a motion for summary judgment based solely on immunity under Pennsylvania law is interlocutory and unappealable. Where the motion is partially based on qualified immunity, the issue becomes more difficult in light of the U.S. Supreme Court's emphasis on the appealability of denials of summary judgment as a necessary part of fulfilling the purpose of qualified immunity. *Mitchell.*

U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The doctrine of qualified immunity has been applied in actions against government officials alleging the violation of rights guaranteed under the United States Constitution. The present standard for determining if qualified immunity applies was first established in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), in which case the U.S. Supreme Court stated that qualified immunity will be found if an official's conduct does not violate clearly established rights which a reasonable person should have known. *Id.* at 818, 102 S.Ct. at 2738. The justification for qualified immunity is that it prevents the high costs to society of public officials being plagued by a plethora of insubstantial law suits. *Id.* at 814, 102 S.Ct. at 2736. In order to find that qualified immunity does *not* apply, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In *Anderson* the Court applied the standard to a warrantless search by asking whether a reasonable officer could have believed the search to be lawful, in light of clearly established law and the information the searching officers possessed. The Court has emphasized in these cases that this is an objective test and the subjective intent of the officials is not controlling.

■ Appellants argue that all of their evidence showed that Stevenson held himself out to be the occupant of the house (e.g. he entered and left through the front door, he parked his car in front of the house, etc.). They then cite *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), in which the U.S. Supreme Court upheld a conviction based on items seized by police officers who had a valid warrant but searched the wrong apartment. The police searched an apartment on the third floor of a

building because their information indicated there was only one apartment on the floor, but they then discovered that there were two apartments. The Court stated that a search warrant must be judged in light of the information available to the officers at the time they act.

*Garrison* sets the standard for the validity of search warrants but it does not answer the relevant question in qualified immunity analysis. The Lancies argue that the surveillance which appellants performed in order to determine that Stevenson lived at the house should also have revealed that the Lancies lived there. They argue it was not reasonable for appellants to conclude that no other person lived at the residence whose rights would be affected by the execution of a search warrant. The pleadings also reveal that the warrant listed the Lancies as the owners of the home and the Lancies allege that the home clearly has separate entrances for the two living areas. There is also a dispute as to what actions the officers took when they entered the home with respect to their communications with Mrs. Lancie and whether the officers gave notice before they entered the home. Based on these facts and allegations, we cannot conclude that the trial judge erred in deciding that there were facts at issue which affect the question of whether a reasonable officer could have believed that all elements of this search were lawful.

■ Appellants also argue that the claims under state law are barred by sovereign immunity as reaffirmed in 1 Pa.C.S. § 2310 and limited by 42 Pa.C.S. § 8522. Appellants argue that they were agents of the attorney general since they were acting in furtherance of an investigation pursued by successive grand juries.[4] Appellants do not describe the exact nature of their relationship with the office of the attorney general and they do not cite any

---

4. While appellants are local police officers, one of the defendants in the trial court who is not an appellant here, Charles Becker, *is* an employee of the attorney general.

authority for the proposition that a local police officer can be found to be an agent of the attorney general for the purposes of sovereign immunity. Under these circumstances, we do not believe that appellants are employees of the attorney general and they are not entitled to statutory sovereign immunity.

Appellants fail to argue that they are protected by *governmental* immunity. In noting this failure, the Lancies argue that appellants would be collaterally estopped from raising governmental immunity since they have not raised it previously. Our Supreme Court has recently stated, however, that governmental immunity is an absolute defense and is not waivable. *Appeal of Tax Claim Unit of Northampton County,* 522 Pa. 230, 560 A.2d 1388 (1989). In light of the absolute nature of the defense and in view of the interlocutory nature of this appeal which will result in a remand, we feel we are required to address the issue.

Under 42 Pa.C.S. § 8545 an employee of a local agency is liable for acts within the scope of his official duties only to the extent that the local agency is liable. 42 Pa.C.S. § 8541 precludes liability of local agencies unless the allegedly injurious act falls under one of the exceptions in 42 Pa.C.S. § 8542. The conduct in this case clearly does not fall in one of the exceptions and the Lancies' negligence counts must therefore fail.

Under 42 Pa.C.S. § 8550, however, an employee is not protected by the local agency's immunity if his act constitutes a crime, actual fraud, actual malice, or willful misconduct. This Court has held that willful misconduct in this context is synonymous with "intentional tort." *King v. Breach,* 115 Pa.Commonwealth Ct. 355, 540 A.2d 976 (1988). Appellants are therefore not protected by governmental immunity with respect to the count of intentional infliction of emotional distress.

■ Lastly, appellants assert that common law official immunity protects them from the state law claims. Since we have already decided that the negligence claims are barred by governmental immunity, we must only decide if the intentional infliction of emotional distress claim is barred by official immunity. We conclude that it is not. Common law defenses are preserved by 42 Pa.C.S. § 8546 for use by employees of local agencies. This section does not apply, however, if the employee's act constitutes willful misconduct. 42 Pa.C.S. § 8550. Official immunity therefore cannot protect these police officers from an action alleging an intentional tort.

In summary, we hold that the trial court did not err in denying the motion for summary judgment as to the federal claims and the claim for intentional infliction of emotional distress. We reverse as to the negligence claims.

## ORDER

NOW, March 23, 1990, the order of the Court of Common Pleas of Allegheny County, dated April 28, 1989, at No. 87–15225, denying a motion for summary judgment, is affirmed as to counts II, III, and V, and reversed as to counts I and IV which are state law claims based on negligence. The case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.