Kristine W. HOLT, Appellant,

v.

NORTHWEST PENNSYLVANIA TRAIN-
ING PARTNERSHIP CONSORTIUM,
INC.; William Lalley, Director, Job Cen-
ter Field Operations; Linda Trimpey,
Director, Erie Regional Office; Donald
Errera, Manager, Venango Area Job
Center, all Employees of Department of
Labor and Industry, Commonwealth of
Pennsylvania; Barbara Frampton, Com-
missioner, Clarion County; Ivan Rose,
Commissioner, Crawford County; Ste-
phan Hale, Commissioner, Forrest
County; Jonathan Hutchinson, Commis-
sioner, and Gerald Britton, Warden of
Venango County Prison, Venango Coun-
ty; John Donaldson, Commissioner,
Warren County.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 9, 1997.
Decided May 13, 1997.

Elizabeth C.M. Carmichael, Franklin, for appellant.

Peter C. Acker, Hermitage, for appellees, NPTPC, Barbara Frampton, Ivan Rose, Stephen Hale, Jonathan Hutchinson and John Donaldson.

Gloria A. Tischuk, Deputy Attorney General, Pittsburgh, for appellees, William Lalley, Linda Trimpey and Donald Errera.

Thomas J. McClain, Pittsburgh, for appellees, Jonathan Hutchinson and Gerald Britton.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and LEADBETTER, JJ.

PELLEGRINI, Judge.

Kristine Holt appeals from the June 16, 1995 and September 5, 1995 orders of the Court of Common Pleas of Venango County (trial court). The first order dismissed Counts I through VII of Holt's complaint on preliminary objections and denied her petition to amend; the second order granted

judgment on the pleadings in favor of the defendants on Counts VIII and IX.

Kristine Holt was hired by Northwest Pennsylvania Training Partnership Consortium, Inc. (NPTPC) as Richard Holt in June of 1989 as an Employability Assessment Specialist as part of a federal jobs program under the Job Training and Partnership Act.[1] NPTPC is a social service agency administering publicly assisted job training to economically disadvantaged persons in a five-county area in Northwest Pennsylvania.[2] Holt was assigned to the Venango Area Job Center in Oil City, Pennsylvania.[3]

In July of 1992, Holt informed his supervisor that he was diagnosed as a transsexual, and that he planned to undergo a medically recommended transition from male to female pursuant to a standard medical protocol. Part of the recommended transition included that Holt assume the female role by dressing and presenting herself as a woman. Although NPTPC initially accepted Holt's transition, and directed its staff to treat Holt "professionally, and with respect," in September 1992, it informed Holt that he would be disciplined for violations of employer policy if he dressed as a woman.

In October 1992, Holt changed his name from Richard to Kristine. In November 1992, Holt began to adopt a female identity and began to dress as a woman. Though a unisex restroom had initially been created to

accommodate her, the restroom accommodations were subsequently rescinded. A few weeks after Holt began dressing as a woman, the Job Center manager ousted Holt from the workplace, whereupon Holt was then reassigned to NPTPC's main office. However, in December of 1992, Holt was dismissed for allegedly violating employer policy regarding the dress code after she began dressing in a unisex fashion at work. NPTPC was also advised by the warden at the Venango County Jail, Warden Britton, that because of safety concerns, Holt would no longer be permitted to enter the jail to conduct assessment interviews either as a male or a female.

Holt filed a nine-count complaint[4] naming the following parties as defendants:

(1) NPTPC;

(2) members of the NPTPC Regional Governing Board who were Commissioners from each of the five counties served by NPTPC (collectively, Commissioners);[5]

(3) employees of the Pennsylvania Department of Labor and Industry (collectively, Commonwealth defendants);[6]

(4) Gerald L. Britton, the Venango County prison warden.

As to the gravamen of Holt's complaint, Counts I through III pertained to NPTPC and the Commissioners as members of its Governing Board:

---

1. 29 U.S.C. §§ 1501 et seq.

2. The five counties are Clarion County, Crawford County, Forest County, Venango County and Warren County.

3. Holt's duties included conducting assessment interviews with potential participants to determine if they met eligibility requirements. The pool of potential participants for which Holt was responsible included inmates at the Venango County Jail.

4. Holt originally filed an informal complaint with the Commonwealth, Department of Labor and Industry, to which the Department responded by issuing a letter to NPTPC stating that Holt should be reinstated, as her discharge was not justified. However, NPTPC took no action to comply with the Department's request. Holt then filed a formal Job Training Partnership Act (JTPA) complaint in which she sought reinstatement of her employment with NPTPC. Though

the Commonwealth, Department of Labor and Industry, originally ruled that Holt should be reinstated to employment with NPTPC and awarded back pay and benefits, the Federal Department of Labor and Industry advised the Commonwealth, Department of Labor and Industry, that the JTPA applied to those persons served by the federally funded JTPA program, not employees of that program such as Holt. As such, Holt's administrative efforts were unsuccessful and she was not reinstated.

5. The Commissioners are: Barbara Frampton, Commissioner, Clarion County; Ivan Rose, Commissioner, Crawford County; Stephen Hale, Commissioner, Forest County; Jonathan Hutchinson, Commissioner, Venango County; and John Donaldson, Commissioner, Warren County.

6. The employees named are: William Lalley, Director, Job Center Field Operations; Linda Trimpey, Director, Erie Regional Office; and Donald Errera, Manager, Venango Area Job Center.

● Count I alleged unlawful discrimination against an employee based on a non-job-related handicap or disability in violation of Section 5(a) and (b)(5) of the Pennsylvania Human Relations Act (PHRA).[7]

● Count II alleged intentional infliction of emotional distress.

● Count III alleged violation of Executive Order 1988–1 prohibiting discrimination on the basis of a non-job-related handicap or disability or on the basis of sexual orientation by a contractor or grantee receiving funds from an agency under the jurisdiction of the Governor.

Counts IV through VII pertained to the Commonwealth defendants, who were three employees of the Pennsylvania Department of Labor and Industry:

● Count IV alleged intentional infliction of emotional distress.

● Count V alleged interference with the employer-employee relationship between Holt and NPTPC.

● Count VI alleged discrimination in public accommodations on the basis of a handicap or disability in connection with NPTPC having rescinded accommodations for Holt to use its women's restroom and having denied Holt entry to her workplace in violation of Section 5(i)(1) of the PHRA, 43 P.S. § 955(i)(1).

● Count VII alleged violation of Executive Order 1988–1 in connection with Holt's ouster from her workplace and for supporting NPTPC in its discriminatory actions.

Count VIII alleged that Warden Britton of the Venango County Prison interfered in the employer-employee relationship between Holt and NPTPC when he denied Holt access to the prison to perform her job duties solely on the basis of Holt's transsexualism.

Count IX alleged that Governing Board member Hutchinson interfered with the employment relationship between Holt and NPTPC when he advised NPTPC to deny Holt's name change.

All defendants, with the exception of Hutchinson and Britton, filed preliminary objections to Holt's complaint, raising both that the complaint failed to state a cause of action and the defense of immunity. Defendants Hutchinson and Britton filed answers and then sought judgment on the pleadings for the same reasons.

As to the preliminary objections, the trial court sustained the demurrer to Count 1 by NPTPC and the Commissioners, since it held that under Section 955(a) of the PHRA, 43 P.S. § 955(a), transsexualism does not constitute a disability under the PHRA. The trial court also sustained the Commonwealth defendants' objection to Count VI, since no acts of alleged discrimination were alleged against the Commonwealth within the 180 day period as required by Section 959(h) of the PHRA. As to Counts I and VI, the court concluded that Holt failed to state a cognizable claim under the PHRA because transsexualism is not a "non-job-related handicap or disability" within the meaning of the PHRA.

As to Counts III and VII, the court concluded that Holt failed to state a claim under Executive Order 1988–1 because the executive order is not legally enforceable. The court dismissed Holt's claims for intentional infliction of emotional distress, set forth in Counts II and IV, because Holt failed to allege specific acts committed by each individual defendant and failed to allege conduct that could reasonably be considered extreme and outrageous to support such a claim. The court dismissed Counts II and V against the Commonwealth defendants based on sovereign immunity: a Commonwealth defendant cannot be held liable for damages arising out of intentional torts, including intentional infliction of emotional distress and interference with the employment relationship.

The trial court granted judgment on the pleadings in favor of defendants Britton and Hutchinson on Counts VIII and IX. The court concluded that at all times material to Holt's claim, Britton and Hutchinson were acting within the scope of their employment and were, therefore, immune from suit as high public officials acting within the scope of their official authority. This appeal

7. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955(a) and (b)(5).

by Holt followed,[8] where she contends that the trial court erred as a matter of law by granting the defendants' preliminary objections and motion for judgment on the pleadings.[9]

## I.

■ Holt contends that the trial court erred by dismissing Counts III and VII of her complaint, pertaining to Executive Order 1988–1, by discharging her from employment or supported her discharge due to her transsexualism. Executive Order 1988–1 is an order dealing with the prohibition of discrimination on the basis of a non-job related handicap or disability, or sexual orientation, by a contractor or grantee receiving funds from an agency under the jurisdiction of the Governor. The trial court correctly concluded that this executive order falls into the category of orders:

> intended for communication with subordinate officials in the nature of the requests or suggested directions for the execution of the duties of the Executive Branch of government .... this class is not legally enforceable, and the Governor could not seek a court order to enforce his

executive order. The executive order would carry only the implication of a penalty for noncompliance, such as a possible removal from office, an official demotion, restrictions on responsibilities, a reprimand, or a loss of favor.

*Shapp v. Butera,* 22 Pa.Cmwlth. 229, 348 A.2d 910, 913 (1975). This order states executive policy as to affirmative action and provides for the implementation and enforcement of affirmative action programs and policy. 4 Pa.Code § 1.162. Only the Governor and those so designated in the order may enforce it, and then only through the imposition of the sanctions stated in 4 Pa.Code § 1.164. The order creates no private right of action to redress wrongful discharge based on the affirmative action policy stated therein. As such, the trial court committed no error of law by dismissing those counts of Holt's complaint asserting a right under this order.

## II.

■ Holt next contends that the trial court erred in holding that transsexualism is not a disability covered by the PHRA.[10] In

---

**8.** When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer, our review is limited to determining whether the court abused its discretion or committed an error of law. *Rok v. Flaherty,* 106 Pa.Cmwlth. 570, 527 A.2d 211 (1987), *petition for allowance of appeal denied,* 517 Pa. 628, 538 A.2d 880 (1988). We must determine, whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). We must accept as true all well-pleaded allegations and material facts averred, as well as inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Id.*

When reviewing a trial court's grant of judgment on the pleadings, our review is limited to determining whether the trial court committed an error of law or abused its discretion. *Ithier v. City of Philadelphia,* 137 Pa.Cmwlth. 103, 585 A.2d 564 (1991). The opposing party's well-pleaded allegations are viewed as true, but only those facts specifically admitted by the opposing party may be considered against him. *Id.* The motion may be granted only where no material facts are at issue and the law is clear that a trial would be a fruitless exercise. *Id.*

**9.** Holt also argues that the trial court abused its discretion in denying leave to amend her com-

plaint. Though Holt correctly set forth the general rule that leave to amend a complaint should be liberally granted, *Bendas v. Township of White Deer,* 131 Pa.Cmwlth. 138, 569 A.2d 1000 (1990), *petition for allowance of appeal denied,* 526 Pa. 639, 584 A.2d 321 (1990), such leave is properly denied where the initial pleadings reveal that prima facie elements of the claim cannot be established, and that the complaint's defects are so substantial that amendment is not likely to cure them. *Lutz v. Springettsbury Township,* 667 A.2d 251 (Pa.Cmwlth.1995). Moreover, we have held that a trial court does not abuse its discretion by failing to grant leave to amend where further amendment could not circumvent a defendant's immunity. *Kearney v. City of Philadelphia,* 150 Pa.Cmwlth. 517, 616 A.2d 72 (1992). Because any amendment of Holt's complaint will not bring the enforcement of the Executive Order–1988 within our jurisdiction, will not affect our legal conclusion that transsexualism is not a disability under the PHRA, nor will it bring the Commonwealth defendants or Commissioners outside the protection of immunity, the trial court properly denied her leave to amend.

**10.** We note that in the unreported case of *Northwest Pennsylvania Training Partnership Consortium, Inc. v. Unemployment Compensation Board of Review,* decided by this Court on March 29,

*Civil Service Commission v. Human Relations Commission*, 527 Pa. 315, 591 A.2d 281 (1991), our Supreme Court addressed what had to be the nature of a person's condition to be considered a disability, specifically, a person is considered to be disabled or handicapped if he or she has (A) a physical or mental impairment which substantially limits one or more major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment. 16 Pa. Code § 44.4. The Court held that in order for an employee to make a prima facie case on the basis that he or she is regarded as having a physical or mental impairment, that person "must show that he [or she] is regarded as having a physiological disorder, cosmetic disfigurement or anatomical loss which affects the body systems" set forth in the regulations.[11] The Supreme Court held that obesity was not a disability because it was not shown to be a physiological disorder, cosmetic disfigurement or an anatomical loss affecting his body systems.

Relying on our Supreme Court's holding in *Civil Service Commission*, in *Dobre v. National Railroad Passenger Corporation ("Amtrak")*, 850 F.Supp. 284 (E.D.Pa.1993), a federal district court considered the exact issue here—whether transsexualism constituted a handicap under the PHRA. The *Dobre* court held that *Civil Service Commission* provided a well reasoned and instructive opinion as to whether transsexualism constitutes a disability. Dobre, born male, but, like Holt, also in the process of changing from male to female, began to attend work dressed as a female. Dobre alleged that she was the victim of unfair discrimination (based on both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as well as the PHRA) because she was required to provide a doctor's note in order to dress as a female, was required to dress as a male, was not permitted to use the woman's restroom, was referred to at work by her male name, and because her desk was moved from the public's view.

As to whether transsexualism constituted a disability under the PHRA, the *Dobre* court held that since Dobre did not allege that she suffered from any organic disorder of the body, and because transsexualism did not limit any major life activities, Dobre was not impaired. As to whether transsexualism constitutes a perceived handicap under the PHRA, the *Dobre* court, noting that in *Civil Service Commission*, our Supreme Court "drastically narrowed the scope of the PHRA by interpreting the third prong of 16 Pa. Code 44(ii)(D) to require proof of actual impairment", held that transsexualism is not a physical or mental impairment or that a transsexual can be regarded as having such an impairment. Because Holt does not allege that transsexualism affects any bodily function or limits her major life activities, and based upon the holdings of *Civil Service Commission* and *Dobre*, her PHRA claims set forth by Counts I and VI were properly dismissed by the trial court.

### III.

As to allegations of tortious interference with her employment relationship or intentional infliction of emotional distress,[12]

---

1994, we held that transsexualism constituted good cause for Holt to violate NPTPC's work rule regarding its dress code and use of the women's restroom facility. NPTPC did not dispute in that proceeding that Holt had a recognized medical condition. A recognized medical condition, such as transsexualism or obesity, does not necessarily support the conclusion that, as such, it is a disability under the PHRA. To the contrary, we have found no support under the law interpreting the PHRA to hold that transsexuals fall within the protected class. See discussion, *infra*.

11. *See* 16 Pa.Code § 44.4. As to the alleged violation of the PHRA, Count I of Holt's complaint only states that the NPTPC and the Commissioners (as NPTPC's governing board) "vio-

lated 43 P.S. § 955(a) and (b)(5), relating to unlawful discrimination against an employee based on non-job related handicap or disability when it terminated her employment because of her transsexualism." Holt does not aver that transsexualism constitutes a disorder or malfunction of any system of the body.

12. In order to maintain an action against a commonwealth party or a local agency, a plaintiff must establish that he or she has a statutory cause of action or that it was one maintainable at common law. *Peak v. Petrovitch*, 161 Pa. Cmwlth. 261, 636 A.2d 1248 (1994). At common law, the tort of intentional infliction of emotional distress, which Holt has alleged against the Com-

the question of whether the Commonwealth defendants[13] can be held liable for the alleged intentional torts, namely, the intentional infliction of emotional distress and the intentional interference with contractual relations must be determined in accordance with the provisions of 42 Pa.C.S. §§ 8521–8522, by which sovereign immunity is conferred upon Commonwealth employees. The Commonwealth defendants, as employees of the Department of Labor and Industry, are governmental employees that may be protected by sovereign immunity.

■ Under 42 Pa.C.S. § 8521, an employee of the Commonwealth (such as an employee of the Department of Labor and Industry), acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims. *LaFrankie v. Miklich,* 152 Pa.Cmwlth. 163, 618 A.2d 1145 (1992). Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress. *Faust v. Department of Revenue,* 140 Pa.Cmwlth. 389, 592 A.2d 835 (1991), *petition for allowance of appeal denied,* 530 Pa. 647, 607 A.2d 257 (1992); *Ray v. Pennsylvania State Police,* 654 A.2d 140 (Pa.Cmwlth.1995), *affirmed,* 544 Pa. 260, 676 A.2d 194 (1996).

In this case, it is not disputed that the Commonwealth defendants were acting other than within the scope of their employment. To the contrary, in her complaint, Holt states:

> At all times relevant hereto, the acts or omissions complained of in this legal action were committed by agents, servants, or employees of the various named defendants acting within the course and scope of their employment.

monwealth defendants, the NPTPC and the Commissioners, did not exist.

**13.** Holt names these Commonwealth defendants not in their capacity *as individuals,* but *strictly as* employees of the Department of Labor, thus Commonwealth employees.

Because the record clearly supports that the Commonwealth defendants were acting within the scope of their employment when the acts alleged by Holt were allegedly committed, they are immune from liability and the counts against them were properly dismissed.

## IV.

■ As to the identical claims made against the Commissioners, Holt alleges at all times in her complaint that the Commissioners were acting as Commissioners, even when serving on the NPTPC Governing Board. Unlike Commonwealth employees, local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice or willful misconduct. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). However, as County Commissioners, Commissioners here are "high public officials" and, as such, enjoy absolute immunity even when willful misconduct is alleged. *Lindner v. Mollan,* 544 Pa. 487, 677 A.2d 1194 (1996); *Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995).[14] Because Holt has brought allegations against the Commissioners acting in their official capacity as high public officials, they are immune from suit, and all counts against them were properly dismissed.

## V.

■ Finally, Count VII of Holt's complaint states a claim against Britton as warden of the Venango County Prison, alleging that he intentionally interfered with her employment relationship with NPTPC by denying her access to the prison to perform her job duties, based solely on her transsexualism. In his motion for judgment on the pleadings, Britton contended that he was entitled to official immunity since he was at all times engaged in conduct authorized or required by law, and engaged in the course and scope of his professional duties as warden.

**14.** Moreover, once it is established that the official is entitled to immunity, the governmental agency cannot be held liable under the theory of respondeat superior, even if the conduct falls within one of the exceptions. *Id.*

The trial court granted his motion for judgment on the pleadings, holding that, as a high public official, Britton was immune from suit, even for false or defamatory statements made within the course or scope of his authority within his jurisdiction.

We agree that Britton is immune from suit, not as a high public official, but because he was an employee carrying out his official duties. As an employee carrying out his official duties, he is liable only to the extent that the local agency itself would be liable. 42 Pa.C.S. § 8545. Therefore, because Britton's conduct does not fall within any of the exceptions to immunity, both he and the local agency are immune. 42 Pa.C.S. §§ 8545–8546; *see also King v. Breach*, 115 Pa. Cmwlth. 355, 540 A.2d 976 (1988). Holt contends that Britton's actions were intentional, and thus, constitute willful misconduct removing his immunity; *see, e.g., Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827 (990). Willful misconduct for purposes of the Act has been defined as conduct whereby the action desired to bring about the result that followed or at least was aware that it was substantially certain to follow so that such desire can be implied. *Id.* While Holt's employment relationship may have suffered because Britton denied her access to the prison, Britton acted within his authority to preserve the best interests of the prison, and to deny access in order to maintain order and discipline within his prison. Other than not allowing Holt access to the prison, no other allegation is made that Britton interfered with her employment relationship. Because his actions in prohibiting Holt access to the prison are within his discretion as warden, Britton is protected by official immunity.

For the foregoing reasons, the decision of the trial court is affirmed and Holt's complaint is dismissed.

### ORDER

AND NOW, this 13th day of May, 1997, the orders of the Court of Common Pleas of Venango County, dated June 16, 1995, and September 5, 1995, are affirmed.

COLINS, President Judge, dissenting.

I dissent to those portions of the majority opinion that affirm the trial court's dismissal of counts I, II, IV, and V of Kristine Holt's complaint.

Taken as a whole, Holt's complaint pleads facts that, if proven, would be sufficient to support her claims for wrongful discharge and intentional infliction of emotional distress. To state a cause of action for intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant, by extreme or outrageous conduct, intentionally or recklessly caused the plaintiff to suffer severe emotional distress. *Johnson v. Caparelli*, 425 Pa. Superior Ct. 404, 625 A.2d 668 (1993), *petition for allowance of appeal denied*, 538 Pa. 635, 647 A.2d 511 (1994). A complaint must at minimum set forth facts upon which the cause of action is based; the plaintiff need not identify the specific legal theories underlying the complaint. *Burnside v. Abbott Laboratories*, 351 Pa. Superior Ct. 264, 505 A.2d 973 (1985), *petition for allowance of appeal denied*, (No. 164 W.Dist.Alloc.Dkt.1986, filed December 18, 1986). It is the duty of the trial court to discover the cause of action from the facts alleged. *Id.*

Holt's complaint alleges specific acts committed by the Commonwealth defendants with the approval and participation of NPTPC and individual members of the NPTPC Governing Board. The complaint specifically alleges that the Commonwealth defendants inflicted emotional distress by rescinding restroom accommodations and by publicly ousting Holt from the job center where she worked; it specifically alleges that NPTPC inflicted distress through its policy of referring to her as Rick/Kristine and by encouraging harassment and ridicule by her co-workers. Whether the acts alleged constitute outrageous conduct to support her claim is a question for a jury and should not be decided by the trial court on preliminary objections. Holt also states a claim against the Commonwealth defendants for intentional interference with her employment contract in that the ouster of Holt from the job center prevented her from doing her job.

I am not as certain as the trial court or the majority that Holt's claims against the Com-

monwealth defendants would fail under sovereign immunity. It is not clear that the Commonwealth defendants were acting within the scope of their employment when they committed the acts alleged. Although the complaint does refer to these defendants in terms of their government employment, Holt also alleges that these defendants acted contrary to Department of Labor policy as set forth in Executive Order 1988–1 and as reiterated in the Department's letter ordering Holt's reinstatement. Furthermore, the tone of the complaint suggests Holt's belief that the defendants acted with malice. To the extent that Holt's complaint may be inconsistent in this respect or to the extent that clarification of her causes of action is necessary, Holt should be permitted to amend her complaint. For these reasons, I would reinstate counts II, IV, and V of Holt's complaint.

Holt's complaint also states a discrimination claim under the PHRA against NPTPC and the Governing Board members. The trial court concluded that Holt is prevented from showing that she is handicapped or disabled under the PHRA even though no Pennsylvania court has addressed the issue of whether transsexualism constitutes a handicap or disability. Holt asserts that she falls within the statutory definition of a handicapped or disabled person in that she is "regarded as having such an impairment." 16 Pa.Code § 44.4.

Although the Pennsylvania Supreme Court limited such claims in *Civil Service Commission v. Human Relations Commission,* 527 Pa. 315, 591 A.2d 281 (1991),[1] it is not clear that Holt is prevented from establishing that she is regarded as having a physiological disorder. "Physiology" refers to the "essential and characteristic life processes, activities, and functions[,]"[2] and physiological disorders cannot be said to exclude transsexualism. Furthermore, the dissenting opinion in *Civil Service Commission* suggests that the standard applied in that

case should not be applied "as an unwavering absolute" where differing factual considerations call for different specifications in proof. *Id.* at 323, 591 A.2d at 285. Holt should be permitted the opportunity to establish that she falls within the protected class. For these reasons, I would reinstate count I of the complaint.

FRIEDMAN, J., joins in this dissenting opinion.

1. "A person who attempts to make a prima facie case on the basis that he is regarded as having a physical or mental impairment, then, must show that he is regarded as having a physiological disorder, cosmetic disfigurement or anatomical

loss which affects the body systems set out [in 16 Pa.Code § 44.4]." *Id.* at 320, 591 A.2d at 283.

2. American Heritage Dictionary 989 (New College Edition, 1979).