IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Frederick Roehrig, Krista Roehrig, and Big Diamond Speedway, LLC, Appellants | : : : | |
| | : | No. 1144 C.D. 2014 |
| v. | : : | Submitted: December 12, 2014 |
| Township of Cass; James D. Thomas, individually and in his official capacity as Supervisor of Township of Cass; Michael Kulpcavage, individually and in his official capacity as Supervisor of Township of Cass; and John W. Walaitis, individually and in his official capacity as Supervisor of the Township of Cass | : : : : : : : : : : : : | |

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED:  August 18, 2015

Frederick Roehrig, Krista Roehrig, and Big Diamond Speedway, LLC (together, Big Diamond Speedway), appeal from the April 17, 2014 order of the Court of Common Pleas of Schuylkill County (trial court) dismissing their complaint against the Township of Cass (Township), and James D. Thomas, Michael Kulpcavage, and John W. Walaitis in their individual capacities and official

capacities as Supervisors of the Township (together, Supervisors). We affirm in part and vacate and remand in part.

## Background

Big Diamond Speedway, LLC, is an automobile race track located in Cass Township, Schuylkill County, and is owned by Frederick Roehrig and Krista Roehrig. The Township is a township of the second class, and the Supervisors constitute the governing body of the Township. (Reproduced Record (R.R.) at 7a.) The genesis of this case concerns the Township's levy of an amusement tax on Big Diamond Speedway, LLC; the presence of local police at the race track at the Supervisors' direction; and allegedly defamatory statements made by Supervisor Thomas. (R.R. at 8a-14a.)

On July 8, 2013, Big Diamond Speedway filed a complaint against the Township and the Supervisors, alleging violations of 42 U.S.C. §1983, trespass, civil conspiracy, tortious interference with contractual and prospective relations, and defamation. The Township and the Supervisors removed the case to the United States District Court for the Middle District of Pennsylvania on the basis of federal question jurisdiction. Following the parties' stipulated dismissal of Big Diamond Speedway's Section 1983 claim, the federal district court remanded the remaining state law claims to the trial court.

In a succinct and accurate manner, the trial court summarized the basic averments in Big Diamond Speedway's complaint as follows:

> The complaint alleges that since 1983, [the Township] imposed a 10% tax on the race track's admission fees, but orally agreed to only collect 5%. On March 29, 2012, [the Township] adopted a new ordinance and, escorted by police, served it upon [Big Diamond Speedway] on April 20, 2012, during a race. [Big Diamond Speedway] alleges that this act was designed to oppress [them], embarrass them in front of hundreds of spectators, and violate their

2

constitutional rights to equal protection and due process. [Big Diamond Speedway] complains that the new ordinance imposed a 10% tax and also gave [the Township's] officials the right to come onto [Big Diamond Speedway's] property to count spectators and audit the admission. [Big Diamond Speedway further] complains that the tax not only applies to spectators, but now also to participants and their pit crew. [Big Diamond Speedway] alleges that [the Township] commenced an aggressive law enforcement program specifically directed at the race track and track participants by having the police stop race track haulers for safety inspections, weighing vehicles and generally making the presence of the police known to participants and spectators, causing a traffic lane back-up onto a public roadway.[1] [Big Diamond Speedway] also alleges that [the Township] threatened to adopt a noise ordinance to further coerce [it] into accepting the new tax rate and Ordinance.

The complaint specifically alleges that . . . [Supervisor] Thomas made fraudulent and negligent misrepresentations in an [email] regarding the Township's ability to impose and collect the tax. . . . [Big Diamond Speedway] alleges that [the Township and the Supervisors] are trying to force the closure of [its] business and conspired against [it] in enacting a new ordinance, imposing a higher tax, making the police presence known, and intimidating race car participants and spectators from attending.

(Trial court op. at 3-4.)

In count I, Big Diamond Speedway asserted a defamation claim against Supervisor Thomas, alleging that he made a false and libelous statement in an email to a citizen of the Township. In this email dated May 7, 2012, Supervisor Thomas allegedly stated:

The people need to understand that [Big Diamond Speedway] forced our hand to count the numbers when they blatantly ripped the Township off in the 2011 Amusement

---

[1] We note that the Township's police department or its individual officers were not named in the complaint as party defendants.

3

> tax revenue. When brought to their attention we were told they know they owe it but they spent it elsewhere. I recommend you get the facts before firing off an email. Call the Township for me or make an appointment then you may hear the facts. The truth never sounds as good as the rumors. Get over the gossip!

(R.R. at 15a.) Big Diamond Speedway also averred that Supervisor Thomas sent a second email to the same citizen on the same date, and an email to a different citizen on May 10, 2012. In these emails, Supervisor Thomas allegedly described Big Diamond Speedway as "some dishonest racetrack owners feeding the public untruthful statements" and stated that: the Township's tax ordinance was necessary "to monitor the counts since there was a gross shortfall;" Big Diamond Speedway "forced [the Township's] hand to hire a company to monitor the gates to compile an accurate count;" and Big Diamond Speedway "spent the money [it owed for taxes] elsewhere." (R.R. at 16a-18a.)

In count II, Big Diamond Speedway pled a trespass claim against the Township and the Supervisors, alleging that the Supervisors directed the police to the race track without legal privilege to do so. (R.R. at 21a.)

In count III, Big Diamond Speedway set forth a claim for tortious interference with contractual and prospective relations against the Township and the Supervisors, averring that their actions in "instituting an aggressive law enforcement program" at the track "intentionally intimidated spectators and race car drivers which resulted in reduced attendance and participation at events at the track." (R.R. at 22a.)

In count IV, Big Diamond Speedway alleged that the Township and the Supervisors engaged in civil conspiracy for the reasons set forth in counts I through III. Big Diamond Speedway further averred that the Township and the Supervisors conspired together to discriminate against Frederick Roehrig on the basis of his

4

physical disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§12131-12300. (R.R. at 23a-25a.)[2]

The Township and the Supervisors filed preliminary objections to the complaint, contending, among other things, that Big Diamond Speedway's claims are barred by governmental immunity and the common law doctrine of absolute privilege for high public officials. The Township and the Supervisors also demurred on the ground that Big Diamond Speedway failed to state a claim for which relief can be granted. (R.R. at 33a-38a.)

In turn, Big Diamond Speedway filed preliminary objections to the Township's and the Supervisors' preliminary objections, contending that the Township and the Supervisors improperly raised the defenses of immunity by way of preliminary objections. Big Diamond Speedway further asserted that the Township's and the Supervisors' preliminary objections impermissibly relied on facts not of record to support their defense of high public official immunity. (R.R. at 39a-41a.) Big Diamond Speedway requested that the Township's and the Supervisors' preliminary objections be dismissed or, alternatively, that they "may amend their [c]omplaint." (Supplemental R.R. at 11b.)

By order dated April 17, 2014, the trial court granted the Township's and the Supervisors' preliminary objections and dismissed Big Diamond Speedway's complaint on grounds of immunity and failure to state a claim. (Trial court op. at 2, 4-5.)

---

[2] Big Diamond Speedway also asserted an independent claim for punitive damages. (Count V of the complaint, R.R. at 25a.) However, a request for punitive damages does not constitute a cause of action in and of itself but is merely incidental to a cause of action. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 517 A.2d 1270, 1275-76 (Pa. 1986). Big Diamond Speedway subsequently agreed to remove the request as a separate count in the complaint.

**Discussion**

On appeal to this Court,[3] Big Diamond Speedway presents seven issues in its statement of questions involved.[4] Nevertheless, the argument portion of Big Diamond Speedway's brief has only four sections, in which various issues are raised and intermingled in a somewhat disjointed and sometimes cursory manner. For the sake of clarity, we address the arguments Big Diamond Speedway raises in its brief in their most logical order.

### A. Whether Big Diamond Speedway's Claims against the Township are barred by Governmental Immunity

Big Diamond Speedway contends that the trial court erred in granting the Township's preliminary objections because it is not clear from the face of the complaint that governmental immunity applies. Big Diamond Speedway asserts, without elaborating, that factual issues exist as to whether the Township is entitled to

---

[3] Appellate review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009). In reviewing preliminary objections, all well pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt. *Id.*

[4] These issues may be summarized as follows: 1) whether the trial court erred in not allowing Big Diamond Speedway to amend its complaint; 2) whether the trial court erred in ruling on the Township's and the Supervisors' preliminary objections when the matters should have been raised as affirmative defenses in new matter; 3) whether the trial court erred in ignoring Big Diamond Speedway's preliminary objections which asserted that the Township's and the Supervisors' preliminary objections were procedurally defective; 4) whether the trial court erred in considering facts not of record contained within the Township's and the Supervisors' preliminary objections; 5) whether the trial court erred in failing to find that Big Diamond Speedway had pled adequate facts supporting the elements of tortious interference with a contractual relationship; 6) whether the trial court erred in failing to find that Big Diamond Speedway had pled adequate facts supporting the elements of civil conspiracy; and 7) whether the trial court erred in ruling on preliminary objections without extending the opportunity for oral argument. (Big Diamond Speedway's brief at 4-5.)

governmental immunity. The Township responds that Big Diamond Speedway's claims against it are barred by governmental immunity because the Township can only be liable for negligent acts that fall within an enumerated exception to governmental immunity and it is obvious that such is not the case here. We agree.

Under sections 8541-8542 of the Judicial Code, commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§8541-8542, a local governmental agency is generally immune from liability in tort for damages caused by its acts or the acts of its officials and employees. 42 Pa.C.S. §8541. The Legislature has waived this grant of immunity when two distinct conditions are satisfied: (1) the damages would be recoverable under statutory or common law against a person unprotected by governmental immunity; and (2) the negligent act of the local agency or its employees which caused the injury falls within one of enumerated exceptions to immunity. 42 Pa.C.S. §8542(a).[5] *See generally White v. School District of Philadelphia*, 718 A.2d 778, 779 (Pa. 1998). For purposes of governmental immunity, the term "negligent acts" does not include "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. §8542(a)(2).

Section 8550 of the Judicial Code governs actions based on the willful misconduct of a local agency's employee:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted

---

[5] The exceptions are for negligent acts related to the following: (1) vehicle liability; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property in the possession of the local agency; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody, or control of animals. 42 Pa.C.S. §8542(b)(1)-(8).

7

a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. §8550.   For purposes of section 8550 of the Judicial Code, "willful misconduct" is construed to mean "willful misconduct aforethought" and is synonymous with "intentional tort."  *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014) (citations omitted).

> It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, section 8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. §8542(a)(2), bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts.  In addition, section 8550 of the [Judicial Code], 42 Pa.C.S. §8550, does not create an exception to section 8542(a)(2), and, as a result, *a local agency may not be held liable for the willful misconduct of its employees.  In order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity set forth in section 8542(b) of the Tort Claims Act*, 42 Pa.C.S. §8542(b).

*Orange Stones*, 87 A.3d at 1022 (emphasis added) (citations omitted).

Here, Big Diamond Speedway's claims for tortious interference, civil conspiracy, defamation, and trespass (to the extent deliberate conduct is averred) are all intentional torts.  *See*, *id.* at 1025 (interference with contractual relations); *DeBlasio v. Pignoli*, 918 A.2d 822, 827 (Pa. Cmwlth. 2007) (civil conspiracy); *Wilson v. Marrow*, 917 A.2d 357, 365 (Pa. Cmwlth. 2007) (defamation); *Gilbert v. Synagro Cent., LLC*, 90 A.3d 37, 52 (Pa. Super. 2014) (trespass).  To the extent that Big Diamond Speedway's trespass claim avers mistaken conduct, neither this nor any of the other claims falls within an exception to governmental immunity.  *See Falor v. Southwestern Pennsylvania Water Authority*, 102 A.3d 584, 590 (Pa. Cmwlth. 2014)

8

(trespass); *Petula v. Mellody*, 631 A.2d 762, 765 (Pa. Cmwlth. 1993) (defamation); *Purdy v. Romeo*, 613 A.2d 91, 93 (Pa. Cmwlth. 1992) (interference with contractual relations and civil conspiracy).

Accordingly, we conclude that the trial court properly granted the Township's preliminary objection to Counts II, III, and IV of the complaint on the basis of governmental immunity and did not err in dismissing all of Big Diamond Speedway's claims against the Township.

### B. Whether Big Diamond Speedway's Claims against the Supervisors are barred by High Official Immunity

Big Diamond Speedway asserts that the defamation claim against Supervisor Thomas and the trespass, tortious interference, and civil conspiracy claims against the Supervisors are not barred by high official immunity because questions of fact remain as to whether the Supervisors were acting within the scope of their authority. The Supervisors argue that the only conclusion to be drawn from the facts alleged in the complaint is that they were acting as high public officials and their alleged misconduct occurred within the course and scope of their authority and power.

The common law doctrine of "high official immunity" insulates "high-ranking public officials" from liability for all conduct taken in the course and scope of their official duties. *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952); *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Cmwlth. 1997). As our Supreme Court has explained:

> [T]he doctrine of absolute privilege for high public officials, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of

9

the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction. . . .

[It is] designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.

*Lindner v. Mollan*, 677 A.2d 1194, 1195-96 (Pa. 1996). The doctrine of absolute privilege for high public officials "rests upon the . . . idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection *even at the expense of uncompensated harm to the plaintiff's reputation.*" *Montgomery v. City of Philadelphia*, 140 A.2d 100, 102 (Pa. 1958) (emphasis added).

Significantly, "the doctrine of high public official immunity is applicable to *actions* by public officials, not just defamatory statements." *Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 566-67 (Pa. Cmwlth. 2005) (emphasis in original). Further, section 8550 of the Judicial Code, which states that official immunity shall not apply to acts of a local agency employee that constitute actual malice and willful misconduct, "does not abrogate the privilege of high public official immunity from suit." *Osiris Enterprises*, 877 A.2d at 566. Consequently, high official immunity will apply even where an official acts with malicious intent or the intent to harm. *Holt*, 694 A.2d at 1140 (concluding that high public officials, acting within the scope of their authority and duties, "enjoy absolute immunity even when willful misconduct is alleged.").

It is well established that township supervisors are "high public officials." *Jonnet v. Bodick*, 244 A.2d 751, 753 (Pa. 1968); *Appel v. Township of*

10

*Warwick*, 828 A.2d 469, 472 (Pa. Cmwlth. 2003). Our Supreme Court has determined that "[t]here are no more important officers in second class townships than the supervisors. They exercise the entire legislative and executive powers of the municipality and there can be no doubt of the fact that they do indeed exercise policy-making functions." *Jonnet,* 244 A.2d at 753. Accordingly, the Supervisors are immune from Big Diamond Speedway's claims so long as the alleged actions underlying Big Diamond Speedway's defamation, trespass, tortious interference, and civil conspiracy claims were taken in the course of their duties or powers and within the scope of their authority. *Id.*

Pursuant to section 607(1) of the Second Class Township Code (Code),[6] the Supervisors are "charged with the general governance of the township and the execution of legislative, executive and administrative powers in order to ensure sound fiscal management and to secure the health, safety and welfare of the citizens of the township." *Id.* Without question, the Supervisors, in exercising their legislative duties, have the authority to enact ordinances. Section 1601 of the Code, 53 P.S. §66601 ("The board of supervisors may adopt ordinances . . . ."). Moreover, the Supervisors, in exercising their executive power, have the authority to direct the police to enforce local legislation and the laws of this Commonwealth. *See generally* sections 1901—1913 of the Code, 53 P.S. §§66901—66913. *See also Soergel v. Board of Supervisors of Middlesex Township*, 316 A.2d 89, 91-92 (Pa. Cmwlth. 1974) (concluding that a police officer in a second-class township has a duty to obey the orders of the board of supervisors, including the supervisors' orders that the officer "make certain traffic checks" and "direct traffic at the roller rink").

---

[6] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65607(1).

11

The factual allegations underlying Big Diamond Speedway's claims of interference with contractual relations, civil conspiracy, and trespass relate to the Supervisors' conduct in enacting the tax ordinance and directing the local police. Contrary to Big Diamond Speedway's assertions, the conduct alleged in the complaint, i.e., enacting the ordinance and directing the local police to the racetrack, indisputably falls within the course and scope of the Supervisors' official duties and authority. Therefore, we conclude that these claims are barred by high public official immunity.

With respect to whether Big Diamond Speedway's defamation claim against Supervisor Thomas is barred by high public official immunity, we must determine whether the statements at issue were made within the scope of his authority. *Pickering v. Sacavage,* 642 A.2d 555, 558 (Pa. Cmwlth. 1994). In this regard, we consider several factors, such as the formality of the forum in which the allegedly defamatory comments were spoken or published and the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance. *Hall v. Kiger*, 795 A.2d 497, 501 (Pa. Cmwlth. 2002). "[T]he privilege must be limited to those statements and actions which are 'closely related' to the performance of those official duties." *Mosley v. Observer Publishing Co.*, 619 A.2d 343, 346 (Pa. Super. 1993) (quoting *McCormick v. Specter*, 275 A.2 688, 689 (Pa. Super. 1971). Thus, to determine whether statements are protected, we must analyze the extent to which the Supervisor's statements are related to his official duties. *Factor v. Goode*, 612 A.2d 591, 593 (Pa. Cmwlth. 1992).

The privilege has been found applicable to defamatory statements made outside official meetings when made pursuant to the official's duties; for example, to reporters at a press conference. *See Montgomery*, 140 A.2d at 105; *Factor*, 612 A.2d at 593*; McCormick*, 275 A.2 at 689. Conversely, comments made by a mayor

12

concerning the acting chief of police were found to be outside the course of the mayor's duties and scope of authority in *McKibben v. Schmotzer*, 700 A.2d 484 (Pa. Super. 1997); and comments by a city comptroller to the press after terminating a city contractor were held to be outside of his official duties and not covered by official immunity in *Rok v. Flaherty*, 527 A.2d 211 (Pa. Super. 1987).

We conclude that the question of whether high official immunity applies to Supervisor Thomas' statements is a fact-specific determination that cannot be made with certainty at this stage of the proceedings. Because questions remain as to whether all or some of those statements were made within the scope of his authority, we conclude that the trial court erred in dismissing Count I of the Complaint on the basis of high public official immunity.

Accordingly, we affirm the trial court's dismissal of Big Diamond Speedway's interference with contractual relations, civil conspiracy, and trespass claims against the Supervisors and we vacate that part of the trial court's order dismissing Big Diamond Speedway's defamation claim against Supervisor Thomas on grounds of high public official immunity.

## C. The Trial Court Properly Considered Immunity Defenses Asserted in the Township's and the Supervisors' Preliminary Objections

Big Diamond Speedway argues that the trial court erred in ruling on the Township's and the Supervisors' preliminary objections because Big Diamond Speedway filed preliminary objections to the preliminary objections, contending that immunity and governmental immunity are affirmative defenses that must be raised in an answer and new matter. The Township and the Supervisors assert that the trial court properly considered the immunity defenses because it is obvious from the face of the complaint that these defenses apply. With respect to Counts II, III, and IV of the Complaint, we agree.

13

Pa.R.C.P. No. 1030(3) provides that immunity from suit is an affirmative defense that must be raised in a responsive pleading under the heading of "new matter." *Id.* However, this Court has created limited exceptions to this rule and permitted immunity defenses to be raised by way of preliminary objections. *See Orange Stones*, 87 A.3d at 1022. Following a line of case law, this Court recently held that "the defense of immunity may be raised by preliminary objections *even when the opposing party objected to the procedure*" in a preliminary objection to the preliminary objection. *Feldman v. Hoffman*, 107 A.3d 821, 832 (Pa. Cmwlth. 2014) (emphasis in original). In *Feldman*, we concluded that consideration of an immunity defense in this procedural posture is appropriate where: (1) the plaintiff had an opportunity to oppose the immunity defenses; (2) it is apparent from the face of the complaint that immunity is applicable; and (3) the plaintiff failed on appeal to identify additional facts that would support the inapplicability of an immunity defense or otherwise prove prejudice. *See id.* at 831-35.

With respect to Counts II, III, and IV of the complaint, Big Diamond Speedway's claims against the Township and its interference with contractual relations, civil conspiracy, and trespass claims against the Supervisors, all the criteria in *Feldman* are present here. Big Diamond Speedway had the opportunity to contest the applicability of immunity before the trial court, and a plain reading of the complaint readily supports the conclusion that immunity bars those claims. Also, Big Diamond Speedway has not demonstrated in its appellate brief that it was prejudiced in any way by the Township's and the Supervisors' assertion of immunity in preliminary objections. Instead, Big Diamond Speedway alleges only that, with respect to the immunity defenses, factual issues need to be explored through additional discovery. In *Feldman*, this Court concluded that the plaintiff's argument that "a full record should have been developed" was insufficient to establish

14

prejudice, especially where, as here, the law makes it clear that immunity bars the claims. *See id.* at 835. In accord with *Feldman*, we conclude that the trial court did not err in ruling on the immunity defenses raised by the Township and the Supervisors in their preliminary objections to Counts II, III, and IV of the Complaint.

### D. Leave to Amend the Complaint

Big Diamond Speedway argues that the trial court abused its discretion in not permitting it leave to amend its complaint because the Township and the Supervisors would not suffer prejudice. The Township and the Supervisors maintain that the trial court did not err in denying amendment because amendment would be futile.

Except where an amendment is allowed as of course under Pa.R.C.P. No. 1028, or granted as of right under other provisions of the Rules of Civil Procedure, the trial court has discretion concerning whether to allow amended pleadings. Pa.R.C.P. No. 1033. A trial court may deny amendment where it appears that the defects are so substantial that amendment is not likely to cure the defects and amendment would therefore be futile. *Weaver v. Franklin County*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007); *Lutz v. Springettsbury Township*, 667 A.2d 251, 254 (Pa. Cmwlth. 1995).

On appeal, Big Diamond Speedway seeks to amend its complaint, asserting that its claims concerning the police's presence at the racetrack could be further developed to meet the real property exception to governmental immunity in section 8542(b)(3) of the Tort Claims Act, concerning injuries resulting from "[t]he care, custody or control of real property in the *possession* of the local agency. . . ." 42 Pa.C.S. §8542(b)(3) (emphasis added). We note that "'[p]ossession' within the real property exception is total control over the premises, and limited control or mere

15

occupation of the premises for a limited period is insufficient to impose liability." *City of Pittsburgh v. Estate of Stahlman*, 677 A.2d 384, 387 (Pa. Cmwlth. 1996). Consequently, we conclude that the trial court did not abuse its discretion in denying Big Diamond Speedway permission to amend its complaint. *See Weaver*, 918 A.2d at 203 ("Plaintiff's state claims fail on the basis of immunity. An amendment will not cure this defect. . . . Thus, remand to the trial court for amendment of Plaintiff's complaint would only delay inevitable dismissal."); *Holt*, 694 A.2d at 1138 ("[A] trial court does not abuse its discretion by failing to grant leave to amend where further amendment could not circumvent a defendant's immunity.").

## Conclusion

We do not pass on the propriety of the parties' conduct, the constitutionality or validity of the ordinance, or any other issue not raised by Big Speedway on appeal. Further, we recognize the potential for abuse inherent in the common law doctrine of high official immunity, as interpreted by our Supreme Court, where the doctrine applies notwithstanding malice or motive. Significantly, we discern no legitimate or rational basis for an ordinance to be "served," on a private party, by police.

Nevertheless, for the above stated reasons, we conclude that the trial court properly dismissed Big Diamond Speedway's claims against the Township on grounds of governmental immunity. We further conclude that the trial court did not err in dismissing Big Diamond Speedway's claims against the Supervisors, where the facts alleged in the complaint set forth conduct to which the absolute privilege of high official immunity applies, and the appeal asserts no basis for the grant of leave to amend the complaint. However, we conclude that the trial court erred in dismissing

16

Big Diamond Speedway's defamation claim against Supervisor asserted in Count I of the Complaint.

Accordingly, we affirm the trial court's dismissal of Counts II, III, and IV of the Complaint; we vacate the trial court's dismissal of Count I of the Complaint; we remand this matter to the trial court for further proceedings, in accordance with the foregoing opinion.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frederick Roehrig, Krista Roehrig, :
and Big Diamond Speedway, LLC, :
        Appellants :
        : No. 1144 C.D. 2014
        v. :
        :
Township of Cass; James D. Thomas, :
individually and in his official :
capacity as Supervisor of Township :
of Cass; Michael Kulpcavage, :
individually and in his official :
capacity as Supervisor of Township :
of Cass; and John W. Walaitis, :
individually and in his official :
capacity as Supervisor of the :
Township of Cass :

## ***ORDER***

        AND NOW, this 18th day of August, 2015, the April 17, 2014 order of the Court of Common Pleas of Schuylkill County is affirmed in part and vacated in part, and the matter is remanded to the trial court for further proceedings.

        Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge