**GATEWAY TOWERS CONDOMINIUM ASSOCIATION, Appellee,**

v.

**Charles KROHN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed Feb. 27, 2004.

Charles Krohn, Pro Se.

Lori A. Gibson, Pittsburgh, for appellee.

Before: LALLY–GREEN,
MONTEMURO,* and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Charles Krohn appeals the trial court's order entering summary judgment in favor of Gateway Towers Condominium Association (the Association) on its action to foreclose a lien under the Uniform Condominium Act, 68 Pa.C.S. § 3101–3414. Krohn contends that the trial court erred in granting judgment because, *inter alia*, material questions of fact remain concerning the Association's compliance with a promise it had made to forebear legal action pending the sale of Krohn's unit. We find no questions of fact remaining. Accordingly, we affirm the trial court's order.

¶ 2 Krohn is the record owner of unit 16C in the Gateway Towers Condominium high-rise in downtown Pittsburgh. This action arose following Krohn's failure to

pay monthly condominium fees assessed to his unit over a period of several months beginning in December 2001. During the intervening period, the amount of Krohn's balance due escalated to $13,163.76. Krohn does not dispute that he failed to pay the fees and does not argue the amount of the assessment. Krohn concedes further that he is without the means to pay the fees unless he sells unit 16C.

¶ 3 Prior to commencement of this action, Krohn and the Association attempted to reach an accommodation concerning Krohn's balance. The Association recorded its understanding of the arrangement in a letter to Krohn of February 22, 2002, which set forth the following conditions:

a) We must lien the property to protect our interest as the amount grows[;]

b) We require a prompt listing agreement for sale with a closing date of 5/31/02 at a competitive and comparable price so that both dollars and time have a definite cap[;]

c) We will not foreclose the property while bona fide sale efforts are underway.

Plaintiff's Motion for Summary Judgment, Exhibit 1 (Letter from Richard D. Matlow to Charles E. Krohn of 2/22/02), at 1. In accordance with the February 22 letter, Krohn listed unit 16C for sale, but in April raised the price of the unit. In response, the Association concluded that Krohn was not pursuing the option of sale in good faith and, in a letter of April 22, 2002, apprised him that it would commence foreclosure proceedings on June 1, 2002. Krohn had not sold the unit by that date.

¶ 4 The Association commenced this action by complaint on December 12, 2002. After Krohn filed his answer, the Association filed a first motion for summary judg-

* Retired Justice assigned to the Superior Court.

ment, which the trial court denied without opinion by order of April 16, 2003. Thereafter, on May 7, 2003, the Association filed a second motion, which the trial court then granted by order of June 10, 2003. Krohn then filed this appeal, *pro se,* raising the following questions for our review:

1. Where there is a dispute as to a genuine issue of material facts [sic] and credibility of affiants, including the written assurance of the Condominium's Board to forbear legal action if certain conditions are met, which conditions were met, is granting of summary judgment reversible error[?]

2. Where parties contractually agreed that arrearages in condominium fees could only be resolved by a lawsuit in assumpsit, is the granting of summary judgment on a complaint of in rem mortgage foreclosure a reversible error[?]

3. Is it reversible error when Judge Baldwin's first decision of April 16, 2003[,] which denied Plaintiff's motion for summary judgment was contradicted by her June 10, 2003 decision granting Plaintiff's second motion for summary judgment **in the absence of any change in the facts of the case**[?]

4. When Defendant raises [sic] New Matter and demanded a jury trial on April 21, 2003 (following Judge Baldwin's first decision on April 16, 2003 which denied Plaintiff's motion for summary judgment) with notice to plead and said New Matter is undenied and unplead [sic] to, is granting summary judgment where pleadings are not closed reversible error[?]

Brief for Appellant at 6.

¶ 5 This Court's scope of review of an order granting summary judgment is ple-

nary. *See Basile v. H & R Block, Inc.,* 777 A.2d 95, 101 (Pa.Super.2001).

Accordingly, we must consider the court's order in the context of the entire record. Our consideration is not limited to the pleadings but includes, as well, depositions, interrogatories, responses to requests for admissions, and affidavits filed by the parties. Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. *Id.* (internal citations and quotation marks omitted).

■ ¶ 6 Summary judgment may be granted only in cases where the record demonstrates beyond any doubt the absence of a genuine issue of material fact and that on the facts adduced, the moving party is entitled to judgment as a matter of law. *See Kafando v. Erie Ceramic Arts Co.,* 764 A.2d 59, 61 (Pa.Super.2000). Accordingly, "[a] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense ...." *McCarthy v. Dan Lepore & Sons Co., Inc.,* 724 A.2d 938, 940 (Pa.Super.1998). In actions for *in rem* foreclosure due to the defendant's failure to pay a debt, summary judgment is proper where the defendant admits that he had failed to make the payments due and fails to sustain a cognizable defense to the plaintiff's claim. *See First Wis. Trust Co. v. Strausser,* 439 Pa.Super. 192, 653 A.2d 688, 694 (1995) (providing that summary judgment is proper in mortgage foreclosure actions where the mortgagor admits the delinquency of his mortgage payments).

■ ¶ 7 In this action, Krohn does not dispute that he failed to make multiple payments to the Association when due.

He relies, however, on several purported defenses to the Association's claim. In support of his first question, Krohn contends that the Association failed to honor the terms of its February 22, 2002 letter, which agreed to forebear commencement of legal action if Krohn listed his condominium for sale. Brief for Appellant at 6. The trial court concluded that the February 22 letter did not constitute a binding contract but reasoned that even if accepted as a basis for promissory estoppel, the letter would provide no basis for relief because Krohn failed to comply with its terms. Trial Court Opinion, 8/29/03, at 3.

¶ 8 This question places at issue the correctness of the trial court's interpretation of a writing. "While the interpretation of ambiguous writings is left to the discretion of the finder of fact, unambiguous terms are construed by the court as a matter of law." *Marcinak v. S.E. Greene Sch. Dist.*, 375 Pa.Super. 486, 544 A.2d 1025, 1027 (1988). The Association's February 22, 2002 letter, on which Krohn relies to establish his defense, states *inter alia*, "[w]e require a prompt listing agreement for sale *with a closing date of 5/31/02* at a competitive and comparable price so that both dollars and time have a definite cap." Plaintiff's Motion for Summary Judgment, Exhibit 1 (Letter from Richard D. Matlow to Charles E. Krohn of 2/22/02), at 1 (emphasis added). Significantly, Krohn does not assert that this provision of the letter was in any way ambiguous. Rather, he acknowledges that it establishes a date certain by which his unit was to have been sold but attempts to discount it, reasoning "[t]his is a requirement over which Defendant had only very limited control" because he could not guarantee a buyer. Brief for Appellant at 7. Krohn contends accordingly that the appropriate inquiry should be whether he exercised good faith to sell his unit, an issue which poses a question of fact and requires admission of extrinsic evidence. Krohn posits no authority for this apparent sleight of hand, however, and we are aware of none. A litigant who relies on a writing to establish his defense cannot pick and choose those parts of it that most suit his position and discount those that do not. The time limitation in the February 22 letter is as clear as any other provision. Krohn simply failed to comply with it and now asserts that the court erred in giving it effect. This argument provides no basis for a finding of legal error. *Cf. In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47, 56, n. 7 (1987) (admonishing that courts will not "make up special provisions for parties who fail to anticipate foreseeable problems"). Thus, Krohn's companion assertion that the trial court erred in granting summary judgment on the basis of the parties' writing provides no basis for relief.

¶ 9 In support of his second question, Krohn asserts that under provisions of the Gateway Towers Code of Regulations, the Association could seek to recover his unpaid balance only by way of a contract action and had no lawful basis on which to commence an action in foreclosure. Brief for Appellant at 7–8. He argues further that the Uniform Condominium Act, upon which the trial court relied in granting the foreclosure the Association sought, does not invalidate contrary provisions of a condominium code of regulations. Brief for Appellant at 8. We find Krohn's argument inconsistent with controlling statutory authority.

¶ 10 The section of the Gateway Towers Code of Regulations on which Krohn relies is, as the trial court recognized, permissive rather than mandatory, empowering the Association to commence legal action to recover a property owner's unpaid fees. It does not, by any express term, restrict the form of action the Association may use.

Rather, the Code appears to incorporate by reference the form of relief allowed by governing law current on the date of the Code's adoption. The operative provision states as follows:

> 11.4 *Suit for Unpaid Assessments.* Any past-due Assessments, Special Assessments, installments of either, and/or interest pursuant to Subsection 11.2 owed by a Unit Owner to the Association may be enforced by a suit by the Council acting on behalf of the Association in an action in Assumpsit as provided in the Unit Property Act.

Attachment to Counter Affidavit of Charles Krohn filed 4/11/03.

¶ 11 Significantly, the Unit Property Act, from which this provision draws its substance, has since been repealed, *see* Act of July 2, 1980, P.L. 286 No. 82, § 2 (effective 120 days from date of enactment), and simultaneously superseded by the Uniform Condominium Act, *see id.* § 1; 68 P.S. § 3101(UCA). Although, as a rule, the UCA applies only prospectively, to condominiums created after its effective date, *see* 68 P.S. § 3102(a), certain provisions apply to all condominiums regardless of the date of their creation *so long as the events involved* occurred after the UCA became effective, *see id.* (explaining that certain subsections of the UCA "apply to all condominiums created in this Commonwealth before the effective date of this subpart; but those sections apply only with respect to events and circumstances occurring after the effective date of this subpart and do not invalidate existing provisions of the declaration, code of regulations or declaration plan of those condominiums").

¶ 12 Among the designated provisions is section 15, *see* 68 P.S. § 3315, which provides for imposition of a lien to secure payment of past due condominium assessments and delineates foreclosure as the appropriate remedy if the lien is not paid or discharged. That section provides, in pertinent part:

**§ 3315. Lien for assessments**

> (a) **General rule.**—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate.

68 P.S. § 3315(a). Although this provision cannot be read to invalidate existing provisions of the governing condominium code of regulations or supplant existing remedies, *see* 68 P.S. § 3102(a), it does provide an additional remedy on which the Association in this case could properly rely. As we recognized, *supra,* nothing in section 11.4 of Gateway's existing Code of Regulations restricts the form of action that may be used to recover unpaid fees or assessments. Because no such restriction appears, section 11.4 poses no impediment to the use of the additional remedy the UCA provides. Accordingly, while the Association retained the right to proceed against Krohn through a contract action for damages, it could lawfully exercise the option to lien his unit and foreclose that lien as provided by the UCA. Thus, Krohn's assertion that the trial court erred in granting summary judgment in response to a foreclosure action by the Association provides no basis for relief.

¶ 13 In support of his third question, Krohn argues that the trial court erred in granting summary judgment in response to the Association's second summary judgment motion when it had denied the Association's first motion on the basis of the same factual record. Brief for Appellant at 8. Krohn argues that the court's denial of the first motion established the "law of the case" and effectively

prevented the court from revisiting the issues except on a supplemented record. Brief for Appellant at 9. We conclude that Krohn misconstrues the law of the case doctrine and his argument fails to state any other basis for relief.

¶ 14 The doctrine of law of the case provides that if an appellate court has considered and decided a question on appeal, neither that court nor any trial court may revisit that question during another phase of the same case. *See PPG Indus., Inc. v. Commonwealth. Bd. of Fin.*, 567 Pa. 580, 790 A.2d 261, 267 n. 11 (2001); *Peden v. Gambone Bros. Dev. Corp.*, 798 A.2d 305, 310 (Pa.Cmwlth.2002). "The doctrine is designed to promote judicial economy, uniformity of decision making, protect the settled expectations of the parties, maintain the consistency of the litigation and end the case." *Peden,* 798 A.2d at 310. Significantly, however, the doctrine applies only to the actions of an *appellate court, see Tarantino v. Kutztown Univ.,* 654 A.2d 115, 117 (Pa.Cmwlth.1995), and cannot be applied to prevent a trial judge from reconsidering his or her prior ruling, *see Farber v. Engle,* 106 Pa.Cmwlth. 173, 525 A.2d 864, 866 (1987). Although the related "coordinate jurisdiction" rule may prevent one trial judge from revising the rulings of another trial judge on the same question, that rule applies only where a second judge purports to review the order of a different judge. *See Leoni v. Whitpain Twp.,* 709 A.2d 999, 1001 (Pa.Cmwlth. 1998). It does not prevent a judge from re-examining and correcting his or her own rulings. *See id.*

¶ 15 In this instance, neither of the foregoing rules can be said to apply. Judge Baldwin's ruling, because it was entered by a trial court, does not establish grounds to limit further consideration under the law of the case doctrine. *See Tarantino,* 654 A.2d at 117. Moreover, the fact that the order she reviewed was one of her own insulates the resulting decision from the coordinate jurisdiction rule. *See Leoni,* 709 A.2d at 1001. We conclude accordingly that Krohn cannot demonstrate, on the basis of either rule, that the trial court erred.

¶ 16 Finally, in support of his fourth question, Krohn argues that the trial court erred in granting the Association's second motion for summary judgment because New Matter, which Krohn had filed after the court's denial of the first summary judgment motion, remained unanswered. Brief for Appellant at 9. Krohn fails, however, to provide any discussion or analysis of this question and cites no authority for the proposition he attempts to advance. Accordingly, we deem his fourth question waived. *See Collins v. Cooper,* 746 A.2d 615, 619 (Pa.Super.2000) (concluding that appellant had waived question on appeal where his brief included only bald allegation of error unsupported by citation to legal authority).

¶ 17 For the foregoing reasons, we affirm the trial court's order granting the Association's motion for summary judgment.

¶ 18 Order AFFIRMED.