J-A04041-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BRANDON R. TROTT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY NAPLES AND LEAR, LLC, | : | |
| | : | |
| Appellees | : | No. 1097 WDA 2014 |

Appeal from the Judgment Entered July 3, 2014
in the Court of Common Pleas of Lawrence County
Civil Division, at No(s): 2005-11278

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:              **FILED APRIL 17, 2015**

Brandon R. Trott (Trott) appeals from the July 3, 2014 judgment entered against him and in favor of Appellees Anthony Naples (Naples) and Lear, LLC (Lear), following a jury trial in this personal injury case.  We affirm.

The trial court summarized the facts of this case as follows.

> This matter arises out of an accident occurring on November 3, 2003 at Neshannock Elementary School in New Castle, Lawrence County, Pennsylvania.  The Plaintiff, [Trott], was employed as an ironworker for Sheraden Steel.  At the time of the accident [Trott] was working on a construction site at Neshannock Elementary School (hereinafter, the "job site").  For the purpose of steel erection in connection with the project, Sheraden Steel rented a crane and crane operator from [Lear]. [ ] Lear sent [Naples] to operate the 50-ton TMS475 crane at the Neshannock job site.
>
> On the morning of November 3, 2003, [] Naples, [Trott], and other members of the construction crew were concluding steel erection activities on the rear of the building.  Also an

---

* Retired Senior Judge assigned to the Superior Court.

ironworker, Mr. Willard Ensminger (hereinafter, "Ensminger") was the foreman on the job site. Ensminger was responsible, *inter alia*, for controlling the work to be completed and, in some instances, the manner in which the work was to be performed. [] Naples described Ensminger to be "the boss."

Later, Ensminger decided to move the construction to the front of the building. [] Naples then drove the crane to the front of the building. While [] Naples was driving the crane to the front, the jib extension, which is also called the lattice boom extension, was positioned to the side of the crane. Once in position, the jib extension had to be swung around the crane to the front in order for the ironworkers to reach interior areas of the building. In order to do so, four pins that were holding the jib extension in place on the side of the crane had to be removed. The pins had to be removed and inserted manually; however, conflicting testimony was presented regarding the permissible and prohibited manners of doing so. [Trott] first climbed onto the side of the crane to remove the pins, and the jib extension swung to the front of the crane. The pins then had to be reinserted to stabilize the jib extension so it could safely move the steel beams. [Trott] then climbed onto the boom and walked toward the head of the jib extension. Conflicting testimony was presented regarding whether the boom moved in any way; nevertheless, [Trott] suddenly fell off the left side of the boom and landed headfirst onto his wrists.

[] Naples testified that in his 50 years of employ as a crane operator, he has never seen an ironworker walk on the boom to insert pins to secure the jib extension. He testified that he would have no reason to think someone was walking on the boom since he had never seen anyone do it. Conversely, [Trott] presented the testimony of Ensminger and another ironworker, Mr. Kevin Cain (hereinafter, "Cain"), who was working alongside [Trott] when he fell, both of whom testified that ironworkers typically walked on the boom to insert pins in this way. Cain testified that he had climbed onto the boom to insert the pins into the jib extension approximate[ly] one thousand times. He and Ensminger also each testified that [] Naples appeared to move the boom while [Trott] was on top of it, which caused [Trott's] fall. They also each testified that no one gave [] Naples a signal to do so; rather, [] Naples made an independent call to move the crane. [] Naples, however, denied this claim. [] Naples explained that while operating a crane, the operator's

view is obstructed and he relies on signaling from ironworkers on the ground. He testified that he never moves the crane without receiving a signal. [] Naples also testified that he engaged the emergency brake and foot brake on the crane so it would have been impossible for him to move the crane at that point.

Trial Court Opinion, 9/8/2014, at 2-4 (footnotes omitted).

Naples moved for summary judgment on the basis that he was a borrowed employee of Sheraden Steel when Trott was injured, and therefore he was not liable under 77 P.S. § 72,[1] which provides that a person cannot be held liable for a work-related injury caused to someone in the same employ. The trial court granted summary judgment to Naples and Lear on this basis, and Trott appealed. On appeal, this Court held that the trial court "usurped the role of a factfinder and abused its discretion" in finding upon conflicting evidence that Naples was the statutory employee of Sheraden Steel. *Trott v. Naples*, 29 A.3d 825 (Pa. Super. 2011) (unpublished memorandum at 9). This Court, therefore, vacated the judgments in favor of Naples and Lear, reversed the orders granting summary judgment, and remanded the case for trial. *Id.* at 10.

The case went to trial, with both sides moving for a directed verdict on the issue of Naples' employer. The trial court denied both motions, and the jury subsequently determined that Naples was the employee of Sheraden Steel at the time of Trott's injury. Trott's post-trial motion was denied,

---

[1] This "fellow servant" rule is part of the Worker's Compensation Act.

judgment was entered in favor of Naples and Lear, and Trott timely filed a notice of appeal.

Trott presents this Court with two questions on appeal: (1) whether the trial court erred in denying Trott's motion for a directed verdict on the issue of Naples' employer, and (2) whether the trial court erred in failing to instruct the jury on a particular federal code provision. Trott's Brief at 8.

We consider Trott's first question mindful of the following standard of review.

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment … only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a [directed verdict] can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Polett v. Public Communications, Inc.***, 83 A.3d 205, 211-12 (Pa. Super. 2013) (quoting ***Ty–Button Tie, Inc. v. Kincel and Co., Ltd.***, 814 A.2d 685, 690 (Pa. Super. 2002)).

- 4 -

The law regarding borrowed servants in general is well-established:

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

*JFC Temps, Inc. v. W.C.A.B. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996) (citations omitted) (citing, *inter alia*, *Mature v. Angelo*, 97 A.2d 59 (Pa. 1953)).

The test is slightly altered for a worker who is supplied to operate a piece of leased equipment.

> Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the [employee]'s manner of performing the work, the servant remains in the service of his original employer.

*Mature*, 97 A.2d at 61 (citations omitted). The presumption is not overcome by "[t]he mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed." *Id.*

Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the jury.

*Id.* (citations omitted).

Naples and Lear argue that the question of whether the trial court erred in submitting the determination of Naples' employer to the jury is controlled by the law of the case doctrine, which provides that "if an appellate court has considered and decided a question on appeal, neither that court nor any trial court may revisit that question during another phase of the same case." ***Gateway Towers Condominium Ass'n v. Krohn***, 845 A.2d 855, 861 (Pa. Super. 2004). A prior panel of this Court determined that the trial court's deciding the issue as a matter of law, on the conflicting facts presented, usurped the role of the fact-finder. Accordingly, Naples and Lear claim that the law of the case doctrine precluded the trial court from deciding the question of Naples' employer as a matter of law and directing a verdict during the subsequent trial. Appellees' Brief at 8-9.

There are only three exceptions to the law of the case doctrine… [1] where there has been an intervening change in the controlling law, [2] a substantial change in the facts or evidence giving rise to the dispute in the matter, or [3] where the prior holding was clearly erroneous and would create a manifest injustice if followed.

***Commonwealth v. O'Bidos***, 849 A.2d 243, 253 (Pa. Super. 2004) (citations and internal quotation marks omitted). There was no intervening

change in the law, nor was the prior holding of this Court erroneous, clearly or otherwise. Although the prior decision was based upon the record at summary judgment rather than the evidence offered at trial, it does not appear that there was any substantial change in the facts or evidence. Thus, we agree with Appellees that the law of the case doctrine applied.

Even if the law of the case doctrine did not here require that the jury resolve the question of who was Naples' statutory employer, we hold that the trial court properly put the question to the jury based on the evidence offered at trial.

The record contains, *inter alia*, the testimony of William Ensminger, a Sheraden Steel employee who was the job foreman when Trott was injured. Ensminger testified that, as foreman, he was responsible for deciding what work was to be done each day. N.T., 2/11/2014, at 157. Naples and the ironworkers worked as a team, and Ensminger was "the quarterback of that team telling each party what to do[.]" **Id.** at 161. He instructed Naples when to begin working with the ironworkers each day, when to eat lunch, and when to leave the site for the day. **Id.** at 160. The Sheraden Steel ironworkers, under Ensminger's stewardship, directed how Naples performed his work by telling him when to move the boom, lift a load, and move the crane. **Id.** at 159. Ensminger decided to move the crane from the back to the front of the school on the day in question. **Id.** at 158. Importantly, Ensminger testified that he was the person who determined that Naples

must use the jib extension on the crane. *Id.* As noted earlier, Trott's injury occurred during the process of attaching the jib extension.

Looking at this evidence in the light most favorable to the Naples and Lear as the verdict winners, it is clear that they produced evidence of Sheraden Steel's control over Naples beyond merely pointing "out to the operator from time to time the work to be done and the place where it is to be performed." *Mature*, 97 A.2d at 61. The evidence was such that the jury was able to conclude reasonably that Sheraden Steel in fact assumed control over the manner in which Naples performed his work, thus rebutting the presumption that Naples remained in Lear's employ. *Cf. O'Connell v. Roefaro*, 137 A.2d 325 (Pa. 1958) (holding presumption was not overcome by the fact that an employee of the company which rented a crane and operator merely gave signals to crane operator, where the company had no right to instruct him how to operate the crane or to tell him when to begin or cease work). Accordingly, the trial court did not err in denying Trott's motion for a directed verdict.

Trott's remaining claim on appeal is that the trial court's instructions as to fall-protection regulations were erroneous. Because the jury determined that Sheraden Steel was Naples' employer, Naples and Lear were shielded from liability. *See* 77 P.S. § 72 (providing that a person cannot be held liable for a work-related injury caused to someone in the same employ). Hence, the jury did not reach the issue of whether the

appropriate fall protections were utilized. Therefore, Trott is unable to demonstrate prejudice, and any error was harmless. ***See***, ***e.g.***, ***Boyle v. Independent Lift Truck, Inc.***, 6 A.3d 492, 496 (Pa. 2010) ("[A]llegations of error are harmless where the jury is not required to deliberate over the issue out of which the alleged error arises in order to reach its verdict.").

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015