IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gywnedd Club Condominium : 
Association : 
 : No. 1628 C.D. 2017
 v. : No. 1816 C.D. 2017
 : SUBMITTED: March 14, 2019
Grace L. Dahlquist, : 
 Appellant : 

BEFORE: HONORABLE ROBERT SIMPSON, Judge
 HONORABLE ANNE E. COVEY, Judge (P.)
 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                              FILED: April 15, 2019

These consolidated appeals arise from two separate actions filed by Gywnedd Club Condominium Association (Association) against Grace L. Dahlquist in the Montgomery County Court of Common Pleas (Trial Court). In each action, the Trial Court entered Judgment in favor of the Association and against Ms. Dahlquist. For the reasons that follow, we affirm both Judgments.

## Background

The Association is a Pennsylvania non-profit corporation operating as a condominium association under the Pennsylvania Uniform Condominium Act (Condominium Act), 68 Pa. C.S. §§ 3101-3414. Ms. Dahlquist owns the condominium unit located at 17 Shannon Drive in North Wales, Pennsylvania, and is a member of the Association. The following is a summary of each action involved in this appeal.

### 1. Trial Court Docket No. 2011-19003 (In Personam Action)

In 2011, the Association initiated legal proceedings against Ms. Dahlquist to recover unpaid condominium assessments dating back to September 2008. On June

13, 2011, the Magisterial District Court entered Judgment against Ms. Dahlquist in the amount of $7,038.30.

On July 12, 2011, Ms. Dahlquist filed a *de novo* appeal in the Trial Court, wherein she asserted counterclaims against the Association for breach of contract, fraud, negligent misrepresentation, and violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 to 201-9.3. Ms. Dahlquist alleged that the Association refused to enforce its rules and by-laws relating to noise, operation of equipment, and unauthorized occupancy of tenants. Ms. Dahlquist's Countercl., ¶¶ 5-8. Specifically, she averred that her upstairs neighbor: engaged in unauthorized construction in his unit, which caused damage to her unit and her personal property; permitted unauthorized tenants to occupy his unit without a lease; generated excessive noise that kept her awake at night; and failed to properly maintain his unit, causing water damage to her unit. *Id.*, ¶¶ 7, 9, 12. According to Ms. Dahlquist, the Association failed to respond to her complaints or enforce its rules with regard to her upstairs neighbor. *Id.*, ¶¶ 10-11. Ms. Dahlquist also alleged that the Association wrongfully denied her access to its pool and laundry facility. *Id.*, ¶ 6.

On August 11, 2011, the Association filed a Civil Complaint in the Trial Court against Ms. Dahlquist, seeking to recover unpaid assessments, interest, costs, and reasonable attorneys' fees and demanding judgment in the amount of $11,433.18. On December 8, 2011, the Trial Court sustained the Association's Preliminary Objections in the Nature of a Demurrer to Ms. Dahlquist's counterclaims for fraud, negligent misrepresentation, and violation of the UTPCPL.

After several years of discovery, on June 3, 2015, the Trial Court granted summary judgment in the Association's favor as to Ms. Dahlquist's counterclaim for

breach of contract and dismissed that counterclaim with prejudice. In its Memorandum and Order, the Trial Court explained:

> [Ms. Dahlquist's] fail[ure] to file a brief in opposition to [the Association's] [M]otion for [S]ummary [J]udgment on the principal claim . . . or otherwise to address the substantive legal propositions and case law advanced in [the Association's] brief supporting the [M]otion (instead citing incomplete discovery as grounds for opposing the [M]otion) has deprived this Court of any meaningful argument against finding [Ms. Dahlquist] liable to [the Association] on the [breach of contract] claim.
>
> . . .
>
> . . . We also accept [the Association's] arguments that [Ms. Dahlquist] has failed to prove [that the Association] breached its governing documents in (1) not taking action against her upstairs neighbor, (2) denying her access to the pool, or (3) not issuing her a key to the laundry, or that the latter two alleged derelictions caused her any damages . . . as the counterclaim alleges.

Trial Ct. Mem. & Order, 6/3/15, at 12, 15. Also in June 2015, the Trial Court granted partial summary judgment in the Association's favor as to Ms. Dahlquist's liability for unpaid assessments, late fees, and charges, with damages to be determined at a subsequent hearing.

### 2. Trial Court Docket No. 2014-29149 (In Rem Action)

On October 29, 2014, while the In Personam Action was still pending, the Association filed a Foreclosure Complaint against Ms. Dahlquist, seeking to foreclose its lien against Ms. Dahlquist's condominium unit for all unpaid assessments, late fees, fines, charges, and expenses. The Association demanded judgment against Ms. Dahlquist and the real property located at 17 Shannon Drive in the amount of $38,623.76, together with pre- and post-judgment interest, litigation costs, attorneys' fees, and other collection expenses. Ms. Dahlquist filed Preliminary Objections to the Foreclosure Complaint, asserting, *inter alia*, that the Association was precluded from

filing a foreclosure action because it had already filed a personal action against her. The Trial Court denied the Preliminary Objections.

### 3. Consolidated Trial Court Proceedings

In March 2016, the Trial Court consolidated the In Personam and In Rem Actions "to avoid potential inconsistent results and duplication of efforts in matters involving common parties and issues of fact and law." Trial Ct. Mem. & Order, 3/1/16, at 1.

On April 5, 2017,[1] the Trial Court held a combined damages hearing in the In Personam Action and non-jury trial in the In Rem Action. After the parties submitted Proposed Findings of Fact and Conclusions of Law, on May 11, 2017, the Trial Court entered Judgment in the Association's favor in both actions and assessed damages against Ms. Dahlquist in the amount of $173,221.93.

On May 21, 2017, Ms. Dahlquist filed Post-Trial Motions, wherein she asserted, *inter alia*, that the Trial Court's award of attorneys' fees was unreasonable and excessive. After argument by the parties, the Trial Court denied the Post-Trial Motions on June 14, 2017. Ms. Dahlquist now appeals to this Court.[2]

### Issues

(1)    Did the Trial Court err in dismissing Ms. Dahlquist's counterclaim against the Association for violation of the UTPCPL?

(2)    Did the Trial Court err in granting summary judgment in the Association's favor on the breach of contract counterclaim?

---

[1] On January 11, 2017, Ms. Dahlquist filed a Chapter 13 bankruptcy in federal court, which was dismissed on January 24, 2017. On February 6, 2017, Ms. Dahlquist filed a second Chapter 13 bankruptcy in federal court, which was dismissed on November 27, 2017, after Ms. Dahlquist filed the instant appeals.

[2] On July 27, 2017, Ms. Dahlquist filed her Notices of Appeal with the Pennsylvania Superior Court, which transferred the matters to this Court for disposition.

4

(3)     Did the Trial Court err in denying Ms. Dahlquist's Motion for New Trial?

(4)     Did the Association's filing of the In Personam Action preclude its subsequent filing of the In Rem Action?

(5)     Were Ms. Dahlquist's appeals timely filed?

## Analysis

### 1. Timeliness of Appeals

Preliminarily, we must address the timeliness of the appeals, as their timeliness implicates this Court's jurisdiction to consider them. The Trial Court entered its Orders denying Ms. Dahlquist's Post-Trial Motions in both actions on June 14, 2017. In her Notices of Appeal, Ms. Dahlquist stated that the federal bankruptcy court granted relief from the automatic stay of these matters on July 25, 2017, allowing her to pursue the appeals. Ms. Dahlquist filed her Notices of Appeal two days later, on July 27, 2017.

However, at the time Ms. Dahlquist filed her Notices of Appeal, final judgment had not been entered in either the In Personam Action or the In Rem Action. Our case law holds that an appeal lies not from the denial of post-trial motions, but from the entry of judgment. *See Mitchell v. Milburn*, 199 A.3d 995, 999 n.2 (Pa. Cmwlth. 2018). Judgment was entered by praecipe in the In Rem Action on January 2, 2018 and in the In Personam Action on March 12, 2018. *See* Pa. R.C.P. No. 227.4(2) (stating that the prothonotary shall enter judgment upon praecipe by a party when "when a [trial] court grants or denies relief but does not itself enter judgment or order the prothonotary to do so").

Because final judgment has now been entered in both matters, this Court has jurisdiction to hear the appeals. *See* Pa. R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); *Perry v. Erie Cty.*, 169 A.3d 1232, 1238 (Pa. Cmwlth. 2018) (recognizing that Pa. R.A.P. 905(a)(5) "acts

5

to perfect a premature appeal 'where an appeal is filed after a trial court makes a final determination, but before the official act of entering judgment has been performed'") (citation omitted).

## 2. Dismissal of UTPCPL Counterclaim[3]

Ms. Dahlquist argues that the Trial Court erred in dismissing her UTPCPL counterclaim because she pled a viable cause of action against the Association under the UTPCPL. To state a claim under the UTPCPL, the plaintiff must allege that the defendant committed one of the unfair or deceptive practices set forth in the statute. Ms. Dahlquist alleged that the Association committed the following unfair trade practices:

> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to[,] or after a contract for the purchase of goods or services is made; [and]
>
> . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusing or of misunderstanding.

Section 2(4)(xiv) and (xxi) of the UTPCPL, 73 P.S. § 201-2(4)(xiv) and (xxi). Specifically, Ms. Dahlquist averred that she purchased the condominium unit for personal use as her home and that, at the time of purchase, she was aware of the rules and regulations that governed the community. Ms. Dahlquist's Countercl., ¶¶ 34, 42. Ms. Dahlquist also averred that the Association engaged in a deceptive practice by

---

[3] Our review of an Order sustaining preliminary objections in the nature of a demurrer is limited to determining whether the Trial Court abused its discretion or committed an error of law. *Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1138 n.8 (Pa. Cmwlth. 1997). We must determine whether, on the facts alleged, the law states with certainty that no recovery is possible. *Id.* We must accept as true all well-pled allegations and material facts, as well as inferences reasonably deducible therefrom, resolving any doubt in favor of overruling the demurrer. *Id.*

failing to comply with and enforce the terms of its governing documents, which caused her to suffer "substantial financial injury and damage." *Id.*, ¶¶ 43, 45-46.

Section 9.2(a) of the UTPCPL provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [S]ection 3 of [the UTPCPL, 73 P.S. § 201-3], may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2(a).[4] "To bring a private cause of action under the UTPCPL, a plaintiff must show that he [or she] justifiably relied on the defendant's wrongful conduct or representation and that he [or she] suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

On appeal, Ms. Dahlquist contends that the UTPCPL applies based on her purchase of the condominium unit. However, it is undisputed that Ms. Dahlquist did not purchase her condominium unit from the Association. Rather, Ms. Dahlquist purchased her unit from Ronald W. Tomkinson, as evidenced by the recorded Deed for the unit. *See* Supplemental Reproduced Record (S.R.R.) at 40b-43b. Consequently, Ms. Dahlquist failed to allege facts establishing that *the Association* sold any goods or services to her that would subject the Association to the UTPCPL's provisions.

Moreover, Ms. Dahlquist failed to allege facts establishing that the Association engaged in "trade" or "commerce" under the UTPCPL. Section 2(3) of the UTPCPL defines "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and

---

[4] Added by the Act of November 24, 1976, P.L. 1166.

7

includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 P.S. § 201-2(3). Because the Association does not offer any property or services for sale, it does not fall within the UTPCPL's purview.

Therefore, we conclude that the Trial Court properly dismissed Ms. Dahlquist's UTPCPL counterclaim.

### 3. Grant of Summary Judgment on Breach of Contract Counterclaim[5]

Ms. Dahlquist argues that the Trial Court erred in granting summary judgment and dismissing her breach of contract counterclaim because discovery had not yet been completed in the In Personam Action. Pennsylvania Rule of Civil Procedure 1035.2(2) provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law . . . if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. No. 1035.2(2).

While parties must be given reasonable time to complete discovery before a trial court entertains a summary judgment motion, the party seeking discovery has an obligation to do so in a timely fashion. We agree with the Association that it would have been unreasonable for the Trial Court to further delay the litigation when Ms. Dahlquist had more than sufficient time to complete discovery, as more than three years had already passed since the filing of the In Personam Action. Throughout the

---

[5] Our review of an Order granting summary judgment is limited to determining whether the Trial Court abused its discretion or committed an error of law. *Hoover v. Stine*, 153 A.3d 1145, 1153 n.9 (Pa. Cmwlth. 2016). Summary judgment may be granted only when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

protracted summary judgment proceedings in the Trial Court, Ms. Dahlquist repeatedly failed to file responsive briefs or pleadings, leaving the Trial Court no choice but to dismiss her breach of contract counterclaim with prejudice. *See* Trial Ct. Mem. & Order, 5/29/15, at 15 ("Having failed to file an answer or brief responding to [the Association's] [M]otion for [S]ummary [J]udgment on the counterclaim, [Ms. Dahlquist] can raise no objection to our granting the [M]otion on the merits.").

Next, Ms. Dahlquist argues that the Association was not entitled to summary judgment on the breach of contract counterclaim because Ms. Dahlquist had effectuated an accord and satisfaction. An accord and satisfaction requires that a bona fide dispute exist between two parties regarding the amount of a debt owed. *Hagerty Oil Co. v. Chester Cty. Sec. Fund, Inc.*, 375 A.2d 186, 187 (Pa. Super. 1977); *see Valley Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1171 n.11 (Pa. Cmwlth. 2015). "The elements of accord and satisfaction are: (1) a disputed debt[,] (2) a clear and unequivocal offer of payment in full satisfaction[,] and (3) acceptance and retention of payment by the offeree." *King v. Boettcher*, 616 A.2d 57, 62 (Pa. Cmwlth. 1992).

Ms. Dahlquist asserts that on March 10, 2014, she tendered a $201 check to the Association, which stated on its face "Full & Final Settlement Any & All Claims," and the Association endorsed and deposited the check. Thus, she claims that there was an accord and satisfaction by her March 10, 2014 payment. We disagree.

As the Association points out in its brief, the amount of the March 10, 2014 check ($201) equaled the condominium fee for one month only. In fact, on the "memo" line at the bottom of the check, Ms. Dahlquist wrote, "March 2014 Condominium Fee." S.R.R. at 151b. Even though Ms. Dahlquist wrote "Full & Final Settlement" on the face of the check, it is evident that such payment did not satisfy her debt obligation to the Association. In addition, the record shows that Ms. Dahlquist made two subsequent payments to the Association after the March 2014 payment, and the Association

9

accepted those payments. This fact alone establishes that Ms. Dahlquist's March 2014 check did not constitute an accord and satisfaction of her debt obligation.

Therefore, we conclude that the Trial Court properly granted summary judgment in the Association's favor on the breach of contract counterclaim.

### 4. Denial of Motion for New Trial[6]

Ms. Dahlquist argues that she is entitled to a new trial on the issue of counsel fees, which she claims were unreasonable and excessive. Of the $173,221.93 verdict, $147,245.08 represented counsel fees. As the Trial Court noted in its Opinion, "[Ms. Dahlquist] does not argue that there was no basis for the counsel fees, only that the amount awarded was not reasonable." Trial Ct. Op., 1/11/18, at 6.

Our Court has explained:

> Whether an award of [counsel] fees is reasonable depends upon "the amount of work performed, the character of services rendered, the difficulty of the problems involved, and the professional skill and standing of the attorney in the profession." . . . The trial court has discretion to decide the reasonableness of an award of [counsel] fees, and an appellate court should not alter the trial court's decision absent a clear abuse of discretion.

*Lower Mount Bethel Twp. v. Gacki*, 150 A.3d 575, 581 (Pa. Cmwlth. 2016) (internal citations omitted). In this case, the Association was entitled to recover reasonable

---

[6] Our scope of review of an Order denying a Motion for Post-Trial Relief is limited to determining whether the Trial Court abused its discretion or committed an error of law. *City of Phila. v. Albert's Rest., Inc.*, 176 A.3d 367, 371 n.4 (Pa. Cmwlth. 2017).

counsel fees under Section 5.6 of its Declaration[7] and Section 3315(a) of the Condominium Act.[8]

At the hearing, the Association submitted ample documentation of the legal fees generated during the course of this litigation, and the Association's property manager, Jessica L. Metzger, testified to numerous factors establishing the reasonableness of those fees. Following the hearing, the Trial Court determined:

> First, the docket, the counsel billing statements, the involvement of four (4) separate law firms and the involvement of the [Magisterial] District Court and Bankruptcy courts[,] a[s] well as the [Association's] need to defend against [Ms. Dahlquist's] four Counterclaims[,] illustrates

---

[7] Section 5.6 of the Declaration provides in relevant part:

Reasonable [counsel] fees (including fees in appellate proceedings) incurred by the Association incident to the collection of any such Assessments or the enforcement of [its] lien, together with sums advanced or paid by the Association in order to preserve and protect its lien, shall be payable by the Unit Owner upon demand and shall be secured by such lien.

Decl. § 5.6.

[8] Section 3315(a) of the Condominium Act provides:

The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate. . . . *Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to [S]ection 3302(a)(10), (11) and (12) [of the Condominium Act] (relating to powers of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section.* If an assessment is payable in installments and one or more installments is not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.

68 Pa. C.S. § 3315(a) (emphasis added).

the enormous amount of work created by this simple collections matter. . . . Indeed, the [Trial C]ourt can attest that the trial at bar was scheduled three (3) separate times only to have [Ms. Dahlquist] file bankruptcy hours before the matter began, to the obvious inconvenience and expense of opposing counsel, the witnesses[,] and the [T]rial [C]ourt.

Further, the [Association] presented evidence in the form of [Ms.] Metzger, who testified to the counsel fees and who described the law firms that worked on the Dahlquist matter and explained their bills. Ms. Metzger further stated that the attorneys' fees were consistent with that of other law firms that she has dealt with. . . . [The Association] likewise submitted [several] [e]xhibits . . . which documented and itemized the counsel fees at issue.

Trial Ct. Op., 1/11/18, at 6-7.

Furthermore, Ms. Dahlquist offered no evidence at the combined damages hearing/foreclosure trial to challenge the reasonableness of the counsel fees sought. The crux of her contention at trial was that the Association failed to mitigate its damages and should not have hired specialized counsel to work on the case. Rather, she claimed that the same collection attorneys should have worked on the matter throughout the proceedings. The Trial Court, however, properly rejected these arguments, finding that "[i]t was [Ms. Dahlquist's] strategies in bankruptcy court and district court that arguably necessitated additional counsel and/or specialized counsel in the first place." *Id.* at 7. We find no error or abuse of discretion by the Trial Court.

### 5. Preclusion of In Rem Action

Ms. Dahlquist argues that when the Association chose to file its In Personam Action against her, it was precluded from filing the subsequent In Rem Action under the doctrine of *lis pendens*.[9] Generally, the doctrine of *lis pendens* is intended to protect "defendants from the harassment of having to defend several suits on the same cause

---

[9] Ms. Dahlquist first raised this claim in her Preliminary Objections to the Foreclosure Complaint. *See* Pa. R.C.P. No. 1028(a)(6) (stating that a party may file a preliminary objection to a pleading on the basis of the "pendency of a prior action").

of action at the same time." *Swift v. Radnor Twp.*, 983 A.2d 227, 234 (Pa. Cmwlth. 2009). The court applies the doctrine of *lis pendens* "when, in the previously filed case, the parties are the same, the rights are the same[,] and the requested relief is the same." *Id.* The court must determine whether the two causes of action arose from the same transaction or occurrence, *i.e.*, "whether the claims involve a common factual background or common legal question." *Id.*

We conclude that the criteria for application of *lis pendens* were not met in this case. Although both actions involved the same two parties, the relief requested in each action was not the same. As the Trial Court determined, the relief sought in the In Personam Action was a monetary judgment against Ms. Dahlquist, whereas the relief sought in the In Rem Action was enforcement of the Association's lien on her property. *Cf. Matternas v. Stehman*, 642 A.2d 1120, 1123-24 (Pa. Super. 1994) (holding that a prior mechanics' lien action did not preclude a subsequent contract action because the lien's in rem nature and the contract action's in personam nature made the causes of action, and the things sued for, different).

Ms. Dahlquist also contends that the Association was precluded from filing the In Rem Action by its governing documents. Section 5.7.1 of the Declaration states, "The Executive Board [of the Association] may take such action as it deems necessary to collect Regular and/or Special Assessments by personal action, *or* by enforcing and foreclosing said lien, and may settle and compromise the same, as it shall so determine." Decl. § 5.7.1 (emphasis added). Thus, Ms. Dahlquist claims that Section 5.7.1 of the Declaration prohibits the Association from pursuing *both* a personal action *and* a foreclosure action against a delinquent unit owner. We disagree.

While it is true that Section 5.7.1 of the Declaration states that the Association may file a personal action "or" a foreclosure action, that Section must be read in conjunction with other relevant provisions of the Declaration. In particular, Section

13

5.6 of the Declaration provides that besides the Association's lien against the property for unpaid assessments, "[a] Unit Owner *shall additionally be personally liable to the Association* for unpaid Regular and/or Special Assessments which are made during the period that the Unit is owned by such Unit Owner." Decl. § 5.6 (emphasis added).

We have found one appellate case involving the interpretation of an association's governing documents with regard to the form of action permitted against a delinquent unit owner. In *Gateway Towers Condominium Association v. Krohn*, 845 A.2d 855, 857 (Pa. Super. 2004),[10] a condominium association filed an action to foreclose its lien against a delinquent unit owner's property for unpaid assessments. On appeal, the unit owner argued that, under the association's governing documents, the association could seek to recover his unpaid assessments *only* by way of a contract action and had no lawful basis for filing a foreclosure action. *Id.* at 859.

The Superior Court held that a provision of the association's Code of Regulations, which allowed the association to bring an action in assumpsit against a unit owner for unpaid assessments, did not preclude the association from filing a foreclosure proceeding. *Id.* at 859-60. The Superior Court explained:

> The section of the Gateway Towers Code of Regulations on which [the unit owner] relies is, as the trial court recognized, *permissive rather than mandatory*, empowering the [a]ssociation to commence legal action to recover a property owner's unpaid fees. *It does not, by any express term, restrict the form of action the Association may use*.

*Id.* at 859 (emphasis added).

---

[10] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

The Superior Court recognized that Section 3315(a) of the Condominium Act[11] authorized the association to institute a foreclosure proceeding on its lien. However, the Superior Court also stated that the association's governing documents could further restrict the association's rights, but in that case, they did not:

> Although [Section 3315(a) of the Condominium Act] cannot be read to invalidate existing provisions of the governing condominium code of regulations or supplant existing remedies, . . . it does provide an *additional remedy* on which the [a]ssociation in this case could properly rely. . . . [N]othing in section 11.4 of Gateway's existing Code of Regulations restricts the form of action that may be used to recover unpaid fees or assessments. Because no such restriction appears, section 11.4 poses no impediment to the use of the additional remedy the [Condominium Act] provides. Accordingly, *while the [a]ssociation retained the right to proceed against [the unit owner] through a contract action for damages, it could lawfully exercise the option to lien his unit and foreclose that lien as provided by the [Condominium Act].*

*Id.* at 860 (emphasis added).

Similarly, we conclude that the language in Section 5.7.1 of the Declaration – stating that the Association "may" file a personal action "or" an action to enforce its lien – is permissive rather than mandatory. When read together with Section 5.6 of the Declaration – stating that a delinquent unit owner "shall additionally be personally liable to the Association" for unpaid assessments – we conclude that Section 5.7.1 does not restrict the form of action the Association may use to seek redress against a delinquent unit owner. As in *Gateway Towers*, Section 5.7.1 of the Association's Declaration "poses no impediment to the use of the additional remedy the Condominium Act provides." 845 A.2d at 860; *see* 68 Pa. C.S. § 3315(a) ("The association has a lien on a unit for any assessment levied against that unit or fines

---

[11] *Gateway Towers* was decided under a prior version of the Condominium Act. However, the language in Section 3315(a) of the prior statute is the same as the language in Section 3315(a) of the present Condominium Act.

15

imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate.").

Therefore, we conclude that the Association was permitted to file the In Rem Action pursuant to its Declaration and Section 3315(a) of the Condominium Act.

### Conclusion

Accordingly, we affirm the Judgments entered in both the In Personam and In Rem Actions.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gywnedd Club Condominium : 
Association : 
: No. 1628 C.D. 2017
v. : No. 1816 C.D. 2017
: 
Grace L. Dahlquist, : 
                 Appellant : 

# **O R D E R**

AND NOW, this 15th day of April, 2019, the Judgments entered by the Montgomery County Court of Common Pleas on January 2, 2018 and March 12, 2018 are hereby AFFIRMED.

_____
ELLEN CEISLER, Judge